Kugris, Appellant, *v.* Hammond Coal Company.

Argued October 6, 1953. Before Rhodes, P. J., Hirt, Reno, Ross, Gunther and Wright, JJ.

*Thomas B. Noonan,* with him *Thomas L. Kennedy, Jr.,* for claimant, appellant.

*E. Mac Troutman,* with him *Penrose Hertzler,* for defendant-employer, appellee.

*C. A. Whitehouse,* Associate Counsel, with him *Ralph H. Behney,* Counsel, for State Workmen's Insurance Fund.

OPINION BY RENO, J., December 29, 1953:

Appellant's husband, Frank Kugris, became totally disabled by anthracosilicosis on July 19, 1947, and his last day of employment was July 18, 1947. He was allowed occupational disease compensation and during his lifetime collected the entire award of $4000. He died on May 27, 1951, as a result of the disease, and on June 27, 1951, appellant filed a claim for $200 for burial expenses. The claim was disallowed by the referee and the Workmen's Compensation Board affirmed.

The referee based his disallowance upon the conclusion: "2. Having found claimant's decedent was paid compensation in full during his lifetime, no compensation is payable." The Board affirmed that conclusion and added another: "3. Since the decedent's death occurred more than three years after his last employment in an occupation having a silica hazard, claimant is not entitled to the expenses of the burial of her deceased."

The court below affirmed the Board, resting its judgment upon the referee's conclusion. The widow appealed. The employer, Hammond Coal Company, and its insurance carrier, Coal Operators Casualty Company, are the appellees. The appeal calls for a review of both conclusions quoted above.

Kugris' last day of employment was July 18, 1947 and his disability began on the day following. Therefore appellant's case must be adjudged according to the legislation then in force which was The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended by the Act of May 18, 1945, P. L. 661, which became effective on July 1, 1945. The pertinent sections of the Acts follow:

Act of 1945, supra, §301(a) 2: "The *maximum compensation* payable under this article for *disability and death* resulting from silicosis, anthracosilicosis, or asbestosis shall not exceed the sum of four thousand dollars ($4000), which shall be full and complete payment for all disability, present or future, or for death from such occupational diseases arising out of employment by any and all employers in this Commonwealth."[1] (Emphasis added.)

Act of 1939, supra, §301(c): ". . . *Wherever death is mentioned* as a cause for compensation under this act, *it shall mean only death* resulting from occupational disease and *occurring within three years after the date of his last employment* in such occupation or industry." (Emphasis added.)

Act of 1945, supra, §307: "In case of death resulting from occupational disease, compensation shall be computed on the following basis and distributed to the

---

[1] Increased to $6500 by the Act of January 2, 1952, P. L. 1811, §1, 77 P.S. §1401, and by the Act of August 24, 1953 (No. 395) §1, to $7500.

following persons, *subject to the limitations of section
301".*  (Emphasis added.)

Act of 1945, supra, §307(8) : "Whether or not there
be dependents as aforesaid, the reasonable expense of
burial, not exceeding two hundred dollars, which shall
be paid by the employer or insurer directly to the under-
taker (*without deduction of any amounts theretofore
paid for compensation or* for medical expenses)."[2]
(Emphasis added.)

Section 307, supra, provides a schedule for the dis-
tribution of the compensation of a deceased compen-
sated or compensable employe.  It designates the per-
sons who are to take the compensation of the deceased
employe and the amounts and the proportions they are
to take.  The persons so designated are the deceased's
dependent blood relatives.  Section 307(8) provides
for burial expenses and they are payable, not to the
deceased's relatives, but to his undertaker, "whether
or not there be dependents" of the deceased.  So, al-
though the provision for burial expenses appears, oddly
enough, in the schedule of distribution it constitutes
a separate and distinct obligation of the employer to
the deceased's undertaker.

Moreover, since the undertaker is to be paid "with-
out deduction of any amounts theretofore paid for com-
pensation or medical expenses",[3] the provision for bur-
ial expenses is plainly and unequivocally an extra and

___

[2] Increased to $250 by the Act of May 14, 1949, P. L. 1379, §2,
77 P.S. §1407, and by the Act of August 24, 1953, (No. 395), §3, to
$425.

[3] A similar provision occurs in the Act, supra, §306(g), 77
P.S. §1406, where, after providing that unpaid compensation shall
be distributed to the deceased's dependents under §307, it is enacted
that "No reduction shall be made for the amount which may have
been paid, or contracted to be paid, for medical and hospital serv-
ices and medicines, *nor for the expenses of the last sickness and
burial.*"  (Emphasis added.)

additional item of the employer's liability. For subrogation purposes, burial expenses are properly regarded as compensation, because they are truly a part of the total liability of the employer. *Myers v. Philadelphia Daily News,* 168 Pa. Superior Ct. 561, 79 A. 2d 787. Where the employer pays the burial expenses he is entitled to subrogation for them. *Leach v. Meadow Gold Dairies, Inc.,* 171 Pa. Superior Ct. 594, 91 A. 2d 293. There is a palpable distinction between the compensation paid to an employe or his dependents to reimburse him or them for the loss of wages or earning power, which is perhaps the prime object of the statute, and the compensation provided for medical services and burial expenses which relieve him or his dependents from the payment of necessary expenditures, directly caused by the compensable occupational disease. Both are compensation but patently they differ as to their objectives, and payment in full of one category of compensation does not exonerate an employer from payment of another. That is the plain and obvious meaning of the phrase, "without deduction of any amounts theretofore paid for compensation or medical expenses." "Compensation" in that phrase pointedly refers to reimbursement for loss of wages or earning power. By joining "compensation" and "medical expenses" in the same sentence and thereby revealing and emphasizing the categorical difference between them, the Act itself recognized the fundamental distinction, and "burial expenses" are but another separate and distinct item of compensation for which the employer is liable.

The case is closely akin to *Kopchak v. Lincoln Gas Coal Co.,* 79 Pa. Superior Ct. 536, 539, decided in the early days of the workmen's compensation legislation. The original workmen's compensation statute contained a provision strikingly similar to the one in ques-

tion. Act of June 2, 1915, P. L. 736, §307(9).[4] The Act of 1915 was amended by the Act of June 26, 1919, P. L. 642, §306(e), whereby the expense of hospital treatment was imposed upon the employer. Against an employer's contention that, having paid the hospital expenses of a deceased employe, he was relieved from the payment of burial expenses, this Court held: "The clear meaning of paragraph seven [of the Act of 1919, supra, which reenacted paragraph nine of the Act of 1915, supra,] is that in case of death the dependents, or if there be none, then the personal representatives of the deceased, shall receive from the employer an amount not exceeding one hundred dollars, *in the nature of an exemption fund,* to meet burial and other expenses of the last illness." (Emphasis added.) See also *Scott v. Hower & Stender,* 88 Pa. Superior Ct. 17.

The doctrine of the cases is that compensation, regarded as a whole, comprehends various classes of indemnity payments, i.e., loss of wages or earning power, medical expenses, hospital treatment, and burial expenses. This view accords with, and is largely drawn from, that expressed in *Haley v. Matthews,* 104 Pa. Superior Ct. 313, 316, 158 A. 645, followed in the *Myers* case, supra, where Judge BALDRIGE, later President Judge, said: "The word 'compensation' appears very frequently in article III [of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended]. It is used, in our judgment, both in its limited sense—contemplating the loss of wages only, and in the more comprehensive sense—including medical and hospital ex-

---

[4] "Whether or not there be dependents, as aforesaid, the reasonable expenses of the last sickness and burial, not exceeding one hundred dollars *(without deduction of any amounts theretofore paid for compensation or for medical expenses)*, payable to the dependents, or, if there be no dependents, then to the personal representatives of the deceased." (Emphasis added.)

penses." In addition to the *Myers* case, supra, the doctrine of the *Haley* case has been followed in variant factual situations in *Staller v. Staller,* 144 Pa. Superior Ct. 83, 18 A. 2d 537, affirmed 343 Pa. 86, 21 A. 2d 16; *Shank v. Consolidation Coal Co.,* 161 Pa. Superior Ct. 304, 54 A. 2d 289; *Leach v. Meadow Gold Dairies, Inc.,* supra. See also *Patterson v. General Refractories Co.,* 42 D. & C. 628.

It is in what Judge BALDRIGE called "its limited sense" that the word "compensation" is employed in §301(a) 2, supra. The limitation of $4000 therein provided for *disability and death* resulting from anthraco-silicosis plainly refers only to the loss of wages and does not include the amounts required to be paid by other sections of the statute, such as surgical and medical expenses, hospital treatment or burial expenses. Nor does the proviso in §307, "subject to the limitations in section 301" bar recovery for the burial expenses provided by §307(8). Since §301(a) 2 refers only to compensation for loss of wages, §307 applies only to so much of §301 as provides for the distribution of compensation for loss of wages of a deceased employe to his relatives and dependents. The limitation does not apply to burial or other expenses. So that, although Kugris received during his life the maximum compensation for the loss of wages, his widow is still entitled to claim on behalf of the undertaker the sum of $200 for burial expenses.

Turning to the contention that appellant's claim is barred by §301(c), supra, we agree with the court below that the principles enunciated in *Toffalori v. Donatelli Granite Co.,* 157 Pa. Superior Ct. 311, 315, 43 A. 2d 584, apply to the instant case and definitely settle the issue. There, the employer and its insurance carrier sought to defeat a widow's claim for the unpaid balance of compensation awarded to her husband in

his lifetime. There, as here, the husband died more than 3 years after the date of his last employment. In a characteristically logical opinion our late colleague, Judge DITHRICH, said, inter alia: "In our opinion the words of Section 301(c), 'Wherever death is mentioned as a cause for compensation . . .' *are applicable in a case where no claim is made during the employee's lifetime for compensation for disability.* In such a case, where the first claim is filed after the employee's death, *death* is the cause for compensation. If the employee dies more than three years after the date of his last employment, the claim is barred. Section 301(c) was intended to prevent stale claims: Meyers v. Moxham Coal Co., supra, [293 Pa. 7, 141 A. 643]. It was not intended to bar dependents from receiving the balance of compensation that has already been awarded on a prompt claim. This is the only just and reasonable construction that can be put on this provision of the act." (Emphasis added.)

As stated, §301(c) applies only to defeat stale claims, to original claims, and not to claims for the continuation of compensation awarded during the lifetime of the deceased and for burial expenses. The argument that all rights to compensation benefits cease after the expiration of three years from the date of the last employment, although founded upon the literal terms of the Act, embraces a dangerous fallacy. It is simply incredible that the General Assembly should have intended by §301(c) to abruptly deny compensation, either for loss of wages or burial expenses, after 3 years, where a valid claim was made during the lifetime of the employe. In many cases, as in *Toffalori* and the instant case, the period during which compensation is to be paid extends beyond the three-year period. In the instant case, Kugris was awarded compensation for 200 weeks, that is, for 3 years and 11 months. (He died

4 days after the date of the check which paid his last instalment of compensation.)[5] If appellees' argument were valid and had Kugris died 3 years and 1 day after the date of his last employment, his burial expenses would be a charge against his family, although his death was due to a disease contracted in the service of his employer, and notwithstanding that on the day of his death he was still receiving compensation payments. It cannot be believed that §301(c) was legislatively designed to produce such a result. The operation of §301(c) must be confined to stale claims, that is, to original claims for compensation or burial expenses in instances where no valid claim had been filed within the three-year period after the last day of employment.

Appellees rely upon *Wonderlick v. Phila. & Reading Coal & Iron Co.,* 170 Pa. Superior Ct. 65, 84 A. 2d 233, but that case strongly fortifies our position. There the employe filed a claim for disability compensation which was dismissed because he had failed to give notice to his employer. After his death, which occurred more than 3 years after the date of his last employment, his widow filed a claim for compensation, which was refused because it was the *first* or *original* claim filed more than 3 years after her husband's last day of employment, his own claim having been invalid. However, the case definitely stands for the proposition that where an employe files a *valid* claim in his lifetime, his widow is, after his death, entitled to the balance of his compensation for loss of wages and burial expenses, even though her claim is filed more than 3 years after his last employment.

The record contains no allegation, evidence, or finding of the identity of the undertaker. Since the burial

---

[5] Curiously, the final receipt offered in evidence, signed by Kugris' mark, is dated June 4, 1951, a week after his death.

expenses "shall be paid by the employer or insurer directly to the undertaker", a finding should indicate to whom the payment shall be made. If it should appear that appellant has fully paid the undertaker for his services, the award for burial expenses in the sum of $200 may be made directly to her.

The judgment is reversed and the record is remitted to the court below with direction to return it to the Board for an award conforming to this opinion.