**Enos ESCAMILLA, Jr., Appellant,**

**v.**

**LIBERTY MUTUAL INSURANCE COM-
PANY, Appellee.**

**No. 8385.**

Court of Civil Appeals of Texas,
Amarillo.

Sept. 10, 1973.

———◆———

Edwards & Associates, Larry A. Elms, Lubbock, for appellant.

Crenshaw, Dupree & Milam, William J. Wade, Lubbock, for appellee.

REYNOLDS, Justice.

The question presented in this workmen's compensation proceeding is whether the jury's findings that the injured workman did not sustain the specific injury and disability claimed are so against the great weight and preponderance of the evidence

as to be clearly wrong and unjust. The question is answered in the negative. Affirmed.

Appellant Enos Escamilla, Jr., sought compensation for loss of use of his left foot. Appellee Liberty Mutual Insurance Company defended on the grounds that there was no injury to the foot, and that if there was any injury, it was one limited to a temporary and partial loss of use of the great toe. Upon submission, the jury found that Escamilla did not sustain an injury to his left foot, but that he did sustain an injury to his great toe with the resultant total temporary loss of use for two weeks and a fifty per cent partial temporary loss of use for four weeks. The two appellate points of error are that the trial court erred in denying a new trial because the jury's refusal to find a foot injury and permanent loss of use of the foot was in total and complete disregard of the great weight of the evidence. The points necessitate a review of all of the evidence to determine its factual sufficiency.

Enos Escamilla, Jr., was employed as an assembler by Clark Equipment Company, Hancock Division, to which Liberty Mutual Insurance Company had issued its policy of workmen's compensation insurance. Escamilla's normal duties consisted of assembling scraper parts in an operation that requires standing, stooping and bending, but not much heavy lifting. In the course of his employment on Friday, November 12, 1971, Escamilla and a fellow workman were moving a 50 or 55 gallon barrel containing oil absorbent. According to Escamilla, the only witness to testify to the nature and extent of the injury, the barrel slipped from their hands and rolled ". . . into my foot, my great toe" and ". . . rolled on my toe." Upon removal of the shoe, the toe was seen to be bleeding. Medical aid was not then available at the first aid station and Escamilla was sent to a medical clinic and treated by Dr. Golightly. The doctor removed the toenail and took an X-ray which revealed no broken bones. Escamilla was returned to work; but he said he felt he could not work and he went home, missing about two days work, although the intervening two days may have been Saturday and Sunday when he normally did not work on the job. When he returned to work, Escamilla was placed on sub-assembly, a job requiring less walking than his regular job, for some six or seven weeks, and then returned to his work as an assembler. Escamilla saw Dr. Golightly about six times, he has not consulted any other doctor, and he is not receiving any heat treatments or like treatment. He continues to work as an assembler and his rate of pay has increased. Escamilla testified that he was able to do his regular job, but on some occasions his foot feels numb and swells at night, he has pain at times in his great toe, and ". . . I will say my foot or toe or whatever you want to call it will never be the same as it was before." His testimony was that there is no restriction about the movement of the toe, and he denied any problems with any sport, climbing, lifting weights or heavy objects, or with household chores. Over objection, Escamilla was allowed to state his opinion that he suffered a total and permanent loss of use of his foot,[1] and that he could not retain employment with another company for the reason that such company would terminate his employment upon learning about his foot.

Relational to the authorities cited in connection with his two points of error, Escamilla recognizes that each case must be adjudicated on its own evidential merits.

1. The appellee insurance company, relying on Texas Employers Insurance Association v. Dimsdle, 440 S.W.2d 359 (Tex.Civ.App.— Dallas 1969, writ ref'd n. r. e.), suggests that Escamilla's opinion of his future disability, and its admission in evidence, were improper; however, since appellee did not assign this as trial court error by a cross-point as required by Rule 420, Texas Rules of Civil Procedure, the suggested impropriety is not properly preserved for appellate appraisal.

Nevertheless, the essential thrust of his argument is that the jury gave insufficient credence to his testimony òf total and permanent loss of use of his foot which, he says, was sufficient to sustain the award he sought. Under the fácts of this case, the argument is not cogent.

■■ To sustain the burden of proving the total loss of use of the left foot, it was necessary that Escamillà demonstrate either that the left foot nò longer possesses any substantial utility as a member of his body, or that the foot's condition is such that Escamilla cannot pròcure and retain employment requiring the use of the left foot. Travelers Insurance Company v. Seabolt, 361 S.W.2d 204 (Tex.1962). Escamilla's own testimony is to the contrary. With reference to, but without reiteration of, the specific testimony, suffice it to state that the evidence was sufficient to establish to the jury's satisfaction that Escamilla's left foot possesses working utility as a bodily member and that his employment requires, and Escamilla employs, the use of his left foot in the performance of his job.

■ Moreover, because Escamilla was an interested party in this suit, his testimony, although uncontradicted, only raised issues of fact for jury determination. The concept that the jury might have arrived at findings different from those it returned does not justify the abrogation of the determinations the jury concluded from the evidence to be the most reasonable. Holly Sugar Company of Hereford v. Aguirre, 487 S.W.2d 421 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.).

■ Viewed in its entirety, the evidence does not reveal the jury's findings to be so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The points of error are overruled.

The judgment is affirmed.