Ronie BURELSMITH, Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

No. 8912.

Court of Civil Appeals of Texas, Amarillo.

June 19, 1978.

Edwards & Associates, Thomas Giovannitti, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil C. Kuhne, Lubbock, for appellee.

REYNOLDS, Justice.

Ronie Burelsmith, an injured worker adjudged to have sustained limited total and partial incapacity, seeks to reverse the judgment on the theory that the evidence establishes a greater incapacity. The state of the evidence does not justify the rejection of the jury's findings. Affirmed.

Burelsmith, a welder, sustained an accidental injury during the course of his employment on 31 May 1975. He sought to establish that his injury rendered him unable to obtain and retain employment doing the usual tasks of a workman. The jury found that Burelsmith suffered total incapacity from 31 May 1975 until 4 August 1975, and that the injury was a producing cause of partial incapacity beginning 5 August 1975 and ending 7 December 1976. Judgment followed.

Burelsmith has appealed. The thrust of his seven points of error is that the jury's answers to the incapacity issues are so against the great weight and preponderance of the evidence as to show bias and prejudice on the part of the jury. This compels a review of all of the evidence which, unless otherwise indicated, is taken from Burelsmith's account of the events.

Burelsmith suffered a sharp pain beneath his left shoulder blade and in his back when he lifted a ten-pound chain with his left hand. Transported on a stretcher to a hospital emergency room, he was given medication and X-rayed. Advised by Dr. Woolam that he had sprained his back and extended the option of being admitted to the hospital or going home, Burelsmith opted to go home.

The following week, Burelsmith saw Dr. Woolam, who told him that he could go back to work. Burelsmith returned to work, but on the second day he "got very nervous, . . . went all to pieces," and returned to Dr. Woolam. The doctor referred him to Dr. Scholz.

After staying home for about a month, Burelsmith saw Dr. Scholz. Dr. Scholz's examination revealed "subjective pain and tenderness in the mid-portion of the dorsal spine." Burelsmith was told that some muscles were pulled loose and he was put on therapy for one month. Afterwards, Dr. Scholz, informing Burelsmith to expect some pain and discomfort and reporting that he did not expect any permanent disability, told Burelsmith that he could go back to work. Burelsmith returned to his same job on 4 August 1975.

Thereafter, Dr. Scholz received Dr. Dunn's 14 November 1975 report that Burelsmith's X-rays were normal and gave no clue that he needed a myelogram. Dr. Scholz then wrote that this represents, as he previously found, "a myofascitis of the dorsal spine or an inflammation problem, probably from trauma, in the muscles, but no involvement of the disc spaces, etc. These problems sometimes are difficult to render asymptomatic. However, anti-inflammatory medications usually takes care of this problem quite well."

Burelsmith did not miss any time from work because of the injury from 4 August 1975 until November of 1976 when he went to see Dr. Scholz for, in his words, "a checkup." At that time, Dr. Scholz noted in his records:

> November 16, 1976: Patient states that he is still working, but aching all over. Cool weather seems to have worsened his symptoms. He is aching in the joints. Could not take Butalozodine because it made his nose bleed. Patient has gone to out patient therapy but has not improved

symptoms. Will admit to hospital for PS, traction, TCNS, back brace, possible myelogram. Admit 11–17–76.

Burelsmith was hospitalized from 17 November 1976 until 4 December 1976. Upon Burelsmith's dismissal, Dr. Scholz recorded:

Lumbosacral strain and sprain, L5 nerve root irritation secondary to musculoskeletal reaction.

Left shoulder strain and sprain, incomplete rotator cuff tear.

Bicepital eenosynovitis long head of biceps brachi.

This 38 year old Caucasian male was referred by Dr. Woolam for an orthopedic evaluation and treatment of injuries, sustained while working on 31 May, 1975. The patient had not responded to out patient regimen. The patient's symptoms were in the low back and in the left shoulder. The symptoms following injuries seemed to be worse with weather changes and increasing activity such as working in an overhead position or heavy lifting caused considerable pain in the left shoulder as well as in the low back area and into the hip and leg area in the distribution of minimal sciatic nerve compression. The patient during this admission was treated with traction, physical therapy, heat, massage, exercises, low back, transcutaneous nerve stimulator, plus progressive exercise regimen to the left shoulder. The symptoms in the left shoulder worked out very nicely as they did in the low back. The patient was elated over the results of his conservative inpatient response. . . . it seemed to be in result of his injuries. There is no other history of injury or aggravation elicited from the patient. His response was such that he is being allowed to return back to full gainful employment on 12–7–76. Extra heavy lifting and excessive climbing of stairs will be limited for some three months. He has been dismissed from my care and instructed to recheck back in the office for return appointments in the future if they become necessary.

Burelsmith returned to work on 7 December 1976. He neither has been back to see Dr. Scholz nor has seen any other doctor. He did not miss any time from work thereafter up to the time of trial in July of 1977. His rate of pay was never reduced because of any incapacity to perform, and he has received the pay rate increases since the time of his injury.

Burelsmith testified that since his injury, he could not do his job as he could before. He had considerable pain in his left arm and leg, and his arm still goes to sleep. He has considerable problems with lifting, climbing, stooping, bending and any physical exercise. He wears a prescribed back brace without which, together with enduring the pain and some home remedies, he could not get and keep his job. He is, in his opinion, getting worse.

Burelsmith's wife of eighteen years confirmed his complaints of pain. She testified that since he discontinued his medication, his condition is worse.

Mickey Coleman, a foreman with Burelsmith's employer, testified that Burelsmith is an above average employee and does very good work. He had no complaints about Burelsmith's work. He assumed that if Burelsmith was returned to work with a limitation on climbing and excessive lifting that he would not have been put in his department.

Highlighting the aspects of the summarized evidence favorable to him, Burelsmith concludes that this evidence shows clearly that he cannot get and keep employment and, particularly, that he was totally incapacitated while hospitalized from 17 November to 4 December 1976, during which time he could not, as a matter of law, be partially incapacitated. The fact that the jury might have arrived at the conclusions Burelsmith advocates does not justify the setting aside of different factual determinations which the jury concluded were the most reasonable if those determinations are supported by the evidence. *Holly Sugar Company of Hereford v. Aguirre,* 487 S.W.2d 421, 425 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.).

Burelsmith had the burden to persuade the jury by a preponderance of the evidence that he was incapacitated to the degree alleged. As an interested party, his testimony merely created fact issues for the jury's resolution. *Escamilla v. Liberty Mutual Insurance Company,* 499 S.W.2d 758, 760 (Tex.Civ.App.—Amarillo 1973, no writ). It was the province of the jury to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies. To this end, the jury was privileged to believe all or part or none of the testimony of any one witness. *Taylor v. Lewis,* 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.).

Applying these principles, it cannot be said that the jury was compelled to find that Burelsmith was totally incapacitated during his November-December 1976 hospitalization. Hospitalization itself does not establish any incapacity. *Cf. Garcia v. Aetna Casualty & Surety Company,* 542 S.W.2d 477, 479 (Tex.Civ.App.—Tyler 1976, no writ), where it was held that hospitalization for medical examinations and tests does not prove either total or partial incapacity.

The mere fact that he was hospitalized did not relieve Burelsmith of his burden to produce proof of incapacity. The jury had for its consideration the evidence that when Burelsmith went for a checkup, he was admitted to the hospital. The admission, as Dr. Scholz's records manifest, was not necessitated by any objective medical finding; rather, the basis for admission was that Burelsmith's symptoms had not responded to out patient treatment. The only symptoms were Burelsmith's expressions of pain, the same symptoms he expressed both before and after the hospitalization.

Thus, any incapacity during the hospitalization, as well as during any other period, is necessarily predicated upon Burelsmith's testimony, the weight of which hinges upon his credibility as judged by the jury. In judging his credibility and, hence, the weight to be given his testimony, the jury had the right to measure them in the light of the other testimony in the record. Burelsmith did testify to the facts which led to his opinion that he could not get and keep employment; yet, the jury had before it factual evidence to the contrary. The jury heard the testimony of Dr. Scholz's 1975 expectation that Burelsmith would experience pain but no permanent disability; of Burelsmith's ability to obtain and retain employment doing his usual tasks with no injury-related loss of pay while he claims total incapacity; of the more than satisfactory appraisal of Burelsmith's work by his supervisor; and of Dr. Scholz's 1976 dismissal of Burelsmith from his care and his release for full employment subject only to two short-term limitations which, outside of Burelsmith's testimony, were now shown to limit his capacity to work. And, while not conclusive, the jury could consider that no treating doctor ascribed any incapacity to Burelsmith.

In resolving the conflicts and inconsistencies in the evidence by the answers it deemed the most reasonable, the jury was not persuaded to wholly accept Burelsmith's account. The jury had this sole right, and we cannot say that the jury was wrong in exercising it. It follows that the determinations of incapacity made by the jury are not so against the great weight and preponderance of the evidence as to justify an invasion of their province to set aside the answers. Accordingly, Burelsmith's points are overruled.

The judgment of the trial court is affirmed.