**L. W. BULLARD**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY.**

**No. 9196.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 26, 1980.

Rehearing Denied Dec. 23, 1980.

Judge & Brown, Phil Brown, Amarillo, for appellant.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellee.

REYNOLDS, Chief Justice.

L. W. Bullard appeals from a judgment, rendered on a jury verdict, denying him recovery of workers' compensation benefits for an on–the–job injury, granting him recovery of unpaid medical care required as a result of his injury, and taxing court costs against him. The predicates for his appeal are juror disqualification and misconduct, legal and factual insufficiency of the evidence to support two answers in the jury verdict, exclusion of evidence, prejudicial jury argument, and the erroneous taxing of costs. No predicate is developed to the status of reversible error, but Bullard is entitled to recover his costs. Reformed and affirmed.

Bullard alleged an injury to his back, and the jury found he received an injury, on 17 November 1977 while in the course and scope of his employment by Don Crow Chevrolet, Inc. The jury failed to find that the injury was a producing cause of any total or partial incapacity. The jury did find that medical care was reasonably required as a result of the injury, and that $205 of the reasonable cost thereof had not been paid by the insurance carrier, Univer-

sal Underwriters Insurance Company. It was stipulated that Universal had paid Bullard $533 in workers' compensation benefits, and it was evidenced that Universal had paid some costs of Bullard's medical care.

Accepting the verdict signed by ten jurors, the court rendered judgment decreeing that Bullard take nothing from Universal except $205 "for medical expenses . . . less proper offsets and payments heretofore made by [Universal] . . . for [Bullard's] . . . medical expenses," and taxing all costs against Bullard.

At the outset, Bullard charges the court with double error in not granting him a new trial on grounds of juror disqualification and misconduct. First, he claims juror Betty Fried was disqualified under Article 2134(4), Texas Revised Civil Statutes Annotated (Vernon 1964), for bias or prejudice in workers' compensation cases. Second, he contends Mrs. Fried's concealment of her bias and prejudice on voir dire examination amounted to misconduct.

During the voir dire process, the jury panel was asked if any member had opinions about workers' compensation cases that might indicate a bias or prejudice against claimants and the Texas Workers' Compensation Act. Mrs. Fried made no response. She answered in the affirmative when asked, by reference to the questioning of other panelists, if she could sit and serve on this particular case. Mrs. Fried was one of the ten jurors who signed the verdict.

Bullard moved for a new trial on the ground that Mrs. Fried's prejudice constituted a disqualification or jury misconduct. The prejudice, so Bullard contends, is proven by the testimony of juror Barbara Anne Echols, one of the the two jurors who did not sign the verdict. Mrs. Echols testified that

She [Mrs. Fried] said that she was having difficulty being a juror on the case because she was prejudiced and that if she were called to be a juror in another worker's [sic] compensation case, she would have herself disqualified. And she said that the reason for her being preju-

diced was that people came into her husband's office and it was a frequent thing that they came in to his office saying that they were hurt when she didn't think they were. In other words, her brief experience with worker's [sic] compensation, that people would try to get money from insurance people.

Mrs. Echols also reported that Mrs. Fried said something along the lines that anybody that comes to court with a workers' compensation claim, especially a back injury, has no case. From these statements, Mrs. Echols believed that Mrs. Fried had an opinion about workers' compensation cases or claimants, especially those with back injuries, and was prejudiced about Bullard's case. Mrs. Echols did not remember whether the evidence was being discussed at the time Mrs. Fried made her remarks, but she was sure Mrs. Fried made the statements on the elevator after the jury was discharged, although she may have said some things while the jury was deliberating.

Mrs. Fried gave testimony that she did not have any bias or prejudice, either for or against the insurance company or the plaintiff. She further testified that she neither had a feeling about, nor had expressed an opinion that might indicate she had feelings against, workers' compensation claimants or cases, especially where back injuries are involved. Mrs. Fried did not remember saying that anybody that comes to court with a workers' compensation claim, especially a back injury, has no case; but, if she said it, she explained, she meant it in connection with the evidence in the cause. She said that before the jury's deliberation she had not decided how she was going to decide this case, and she based her decision in this case on the evidence she heard.

The trial court overruled Bullard's motion for new trial. By so doing, the court impliedly found that Mrs. Fried did not have a bias or prejudice which, under Article 2134(4), disqualifies a person from serving as a juror. Bias or prejudice, which is to some extent common to all persons, operates as a statutory disqualification when the bias or prejudice reaches that

degree which produces a state of mind in favor of or against one of the litigants or the type of suit so that the panelist would not, or the juror did not, act with impartiality or had prejudged the cause. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). If evidence conclusively establishes that state of mind, the person is disqualified as a matter of law; otherwise, the reviewing court must consider the evidence in the light most favorable to upholding the trial court's ruling. *Id.* at 182.

■ Here, the conflicting evidence does not conclusively establish a biased or prejudiced state of mind which, as a matter of law, would disqualify Mrs. Fried from serving as a juror. Crediting the evidence favorable to the court's ruling, as we must, it cannot be said that Mrs. fried had a disqualifying bias or prejudice which was concealed. The first two points are overruled.

Asked whether Bullard's injury was a producing cause of any total or of any partial incapacity, the jury answered "No" to each inquiry. Bullard's third– and fifth–point–of–error challenges that there is no evidence to support the "no" answers are unavailing.

■ By the use of these "no evidence" points, Bullard does not undertake to demonstrate that he conclusively established either total or partial incapacity; instead, he proceeds from the erroneous assumption that the "no" answers are affirmative findings of the nonexistence of any total or any partial incapacity. Properly interpreted, each "no" answer is nothing more than a failure or refusal by the jury to find from a preponderance of the evidence the fact of incapacity which Bullard had the burden to affirmatively establish, and simply means that he failed to discharge his burden of proof. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). The interpretation is peculiarly applicable here inasmuch as the court charged the jury that the questions "should be answered 'Yes,' if you *so find from* a preponderance of the evidence; otherwise, answer 'No.'" Hence, the failures to find need not be supported by evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). *See also Lovato v. Ranger Ins. Co.*, 597 S.W.2d 34, 36, n. 1, 2 (Tex.Civ.App. Amarillo 1980, writ ref'd n. r. e.).

However, Bullard properly drafted his points four and six to challenge the negative answers as being against the great weight and preponderance of the evidence. These challenges require us, under the dictates of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), to consider and weigh all of the evidence, which is summarized below, to determine whether, on balance, Bullard carried his burden of proof on either of the issues of total or partial incapacity.

Bullard's work history was that of an automobile mechanic, specializing in "heavy line" engine overhauls, transmission and rear–end repairs for Don Crow Chevrolet, Inc. in Lubbock. Prior to Bullard's November, 1977 injury, he was not, so he and Crow Chevrolet's service manager testified, restricted in his work efforts. On 17 November 1977, Bullard complained of an injury to his back and consulted a physician. The hospital records reflect that Bullard gave a history of pain for one week and "[s]tates he has not injured back at any time and thinks this is 'muscle spasm'."

After about a week, Bullard returned to his regular work, working in that capacity, with twelve or thirteen days off because of pain, until about 30 January 1978. At that time, Bullard complained of reinjuring his back. He was X–rayed, given written instructions to follow carrying the notation "Disabled from work 5–6 days," and referred to Dr. Bishara. The history of pain furnished the doctor made no mention of trauma in 1977. X–rays ruled out any fractures and a radiologist's report showed no irregularities produced by an injury. The doctor, giving Bullard medication and therapy treatments, told Bullard on 23 February 1978 to return to work. Later, when Dr. Bishara saw Bullard on 9 March, Bullard had absolutely no complaints and there was no evidence of disability. Afterwards on 11 July, both an EMG, performed to determine if there were any affected nerves

or muscles from a pinched nerve, and nerve conduction studies were normal. The doctor released Bullard from his care each of the several times he saw him, telling Bullard "that he is all right." Still, the doctor said he would not advise Bullard to do work that entails lifting and stooping.

When Bullard returned to work in February of 1978, he did light work for two weeks and then became a service advisor. He, according to two fellow employees, complained of back pain. Bullard took a vacation and, instead of returning to work at Crow Chevrolet, he relocated in New Mexico. He explained that he had just gotten or was getting a divorce and was disinterested in the job. He said he applied for some jobs which he did not get because of his injury.

In August of 1978, Bullard returned to Lubbock and began working for a transmission shop, rebuilding transmissions. He said that he had trouble with his back, but he left that employment because of boredom.

In November, Bullard was reemployed by Crow Chevrolet to work on automatic transmissions, a task of heavy line mechanics. By agreement, he did not work a set number of hours but only until the day's work was done. Don Crow, Jr., the general manager, testified that the work Bullard was hired to do would fall in the middle range of heavy line work. While he was in the shop at least twice a day, Crow never observed any inability of Bullard to do the work, and Bullard never indicated that he was not able to do the work. Bullard testified that he missed two or three days work because his back was bothering him up to 13 February 1979. At that time, Bullard was terminated by Crow Chevrolet after Bullard, without notice, "was off a few days, going to a funeral."

Since that time, Bullard has been self-employed in a transmission parts business. In his opinion, he cannot get and keep a job doing heavy line mechanic work. The reason, he said, is because he still is having some irritation with his back and, if he began bending and stooping, he is sure he would have problems again.

From this evidence, Bullard perceives that, despite the evidence to the contrary, the jury was compelled to find some degree of total and partial incapacity. This results, he argues, from the force of his own testimony of post–injury circumstances–i. e., his relation of days missed from work, less strenuous jobs, inability to obtain employment, and his opinion of incapacity–aided by his fellow workers' testimony of his pain, and coupled with the medical notation of 5–6 days disability and the medical advice to avoid lifting and stooping.

■ Be that as it may, Bullard had the burden to persuade the jury by a preponderance of all of the evidence that he was incapacitated. The evidence bearing on incapacity was conflicting and contradictory. Bullard's appraisal of the evidence is from a partisan viewpoint and, because he was an interested witness, the jury was not required to accept his testimony at face value, *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 297–98 (1956), even where it was not specifically contradicted by other evidence. *Escamilla v. Liberty Mutual Insurance Company*, 499 S.W.2d 758, 760 (Tex.Civ.App.–Amarillo 1973, no writ).

Thus, it became the province of the jury to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies. In this role, the jury was privileged to believe all or part or none of the testimony of any one witness. *Burelsmith v. Liberty Mut. Ins. Co.*, 568 S.W.2d 695, 698 (Tex.Civ.App.–Amarillo 1978, no writ). And the fact that Bullard persuaded the jury he received an injury did not compel the jury to find the injury produced some degree of incapacity. *Garcia v. Aetna Cas. & Sur. Co.*, 542 S.W.2d 477, 479 (Tex.Civ.App.–Tyler 1976, no writ). Moreover, the fact that the jury might have reached the viewpoint Bullard advocates does not justify the setting aside of answers which the jury concluded were the most reasonable under the evidence. *Accord, Burelsmith v. Liberty Mut. Ins. Co., supra,* at 697.

Giving proper deference to the jury's role, we cannot say, after reviewing and considering all of the evidence, that the jury's failure to find either any total or partial incapacity is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Points four and six are overruled.

Bullard utilizes his seventh point to complain of the court's exclusion of two exhibits he offered on the issue of his ability to get and keep employment. The exhibits are statements which apparently were prepared at the time of Bullard's November, 1978 reemployment. By these statements, Bullard, by signing one of them, purports to wave any and all claims, or at least claims from and after 15 November 1978, for disability and/or death resulting from any back or back–related injury while in the employment of Don Crow Chevrolet. Clearly, the statements have no validity. Tex.Rev.Civ.Stat.Ann. art. 8306, § 14 (Vernon 1967); *James v. Vernon Calhoun Packing Company*, 498 S.W.2d 160, 162 (Tex. 1973). Bullard does not cite any authority for the admissibility of the invalid statements. It suffices to state that the exhibits were, at best, merely cumulative of evidence admitted on the same subject. The trial court may, in the exercise of its discretion, limit the amount of evidence on a particular issue, and exclusion of cumulative evidence is not reversible error in the absence of an abuse of discretion. Absent an abuse of discretion, which Bullard does not suggest, the exclusion of cumulative, not controlling, evidence does not call for a reversal. *See Whitener v. Traders and General Ins. Co.*, 155 Tex. 461, 289 S.W.2d 233, 236 (1956). Point seven is overruled.

Next, Bullard assigns reversible error to Universal's counsel arguing to the jury the effect of false claims on everyone's insurance premium rates. Universal demonstrates that the argument was specifically predicated upon and made in reply to Bullard's counsel's voir dire statements. By being invited or provoked, the argument does not fall into that rare category of harmful error. *Standard Fire Ins. Co. v.*

*Reese*, 584 S.W.2d 835, 839 (Tex.1979). Point eight is overruled.

Last, Bullard contends that the court erred in overruling his motion to tax costs against Universal. By virtue of the judgment vindicating Bullard's claim for unpaid medical costs, he was, within the meaning of Rule 131, Texas Rules of Civil Procedure, the successful party entitled to recover his costs. *See Lovato v. Ranger Ins. Co.*, 597 S.W.2d 34, 37 (Tex.Civ.App.–Amarillo 1980, writ ref'd n. r. e.). Notwithstanding, and irrespective of its judicial statement that the $205 would be paid, Universal responds that because it had paid Bullard $533 in compensation benefits for which it was not liable, the unpaid medical costs were more than offset, making it the successful party for cost purposes.

The precise question does not appear to have been answered in Texas, but the very nature of the payments dictate that the payment of compensation benefits does not satisfy or offset the liability to pay medical costs. Compensation payments reimburse an employee for loss of earning capacity, *Traders and General Insurance Company v. Rockey*, 278 S.W.2d 490, 492–93 (Tex.Civ.App.–Amarillo 1955, writ ref'd n. r. e.), while medical payments cover the costs of medical care required to cure and relieve from the effects naturally resulting from the injury. Tex.Rev.Civ.Stat.Ann. art. 8306, § 7 (Vernon Supp. 1980). Recovery of medical costs is not dependent upon a final adjudication of the employee's compensation claim. *Maryland Casualty Co. v. Hendrick Memorial Hospital*, 169 S.W.2d 965 (Tex.Civ.App.–Eastland 1942), *aff'd*, 141 Tex. 23, 169 S.W.2d 969 (1943). The Superior Court of Pennsylvania has recognized the same distinction between compensation paid for loss of earning power and that paid for medical services, and held that the payment in full of one does not exonerate the obligation to pay the other. *Kugris v. Hammond Coal Co.*, 174 Pa.Super. 376, 101 A.2d 155, 158 (1953). Conformably, we hold that the payment of compensation benefits, albeit not owed by later adjudication, does not satisfy or offset the adjudged liability for medical costs. Point nine is sustained.

Accordingly, the judgment is reformed to decree that costs incurred in the trial court are taxed against Universal Underwriters Insurance Company. As reformed, the judgment is affirmed. Tex.R.Civ.P. 434.

Sixty–two (62%) percent of the costs of appeal are taxed against L. W. Bullard, and thirty–eight (38%) percent of the costs of appeal are taxed against Universal Underwriters Insurance Company. Tex.R.Civ.P. 448.