

NUMBER 13-09-00536-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ERNEST BELMAREZ, EDDIE GUAJARDO,
WILLIAM PHILLIPS, CHRIS SHANNON,
RAMICO RAMOS, AND NORMA MAYORGA,                    Appellants,

v.

FORMOSA PLASTICS CORPORATION, TEXAS,
FORMOSA PLASTICS CORPORATION, U.S.A., ET
AL.,                                               Appellees.

On appeal from the 135th District Court
of Calhoun County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides

This appeal arises from a take-nothing jury verdict on a personal injury lawsuit resulting from a fire that occurred at the Formosa Plastics Corporation USA ("Formosa") plant in Point Comfort, Texas. By five issues, appellants Ernest Belmarez, Eddie Guajardo, William Phillips, Chris Shannon, Norma Mayorga, and Ramico Ramos (collectively "Plaintiffs"),[1] argue the trial court erred when it: (1) excluded the Taproot Incident Report from evidence; (2) excluded OSHA Citations and Notices of Penalty issued to Formosa from evidence; (3) admitted evidence regarding Plaintiffs' failure to file workers' compensation claims; (4) excluded the Social Security disability findings for Belmarez and Guajardo; and (5) allowed jury argument regarding Plaintiffs' counsel's character, professional ethics, and integrity, which caused incurable error. We affirm.

## I. BACKGROUND

On October 6, 2005, Defendant Fernando Rivera, a forklift operator, accidentally hit a valve while driving a forklift and towing a trailer in the Olefins II unit at the Formosa plant. The accident released liquid propylene into the air, causing a fire and several explosions. Formosa ordered immediate evacuation of the plant.

Plaintiffs, persons who worked at the plant but were not employed by Formosa, claimed they were injured while fleeing the incident. Their injuries consisted primarily of back and shoulder problems. They also claimed to have developed post-traumatic stress syndrome in response to this event. Plaintiffs sued five sets of defendants: (1)

---

[1] According to Plaintiffs, the Formosa explosion generated approximately sixty-five claims for personal injury. The six Plaintiffs in the underlying case were chosen as a "test case" to help manage the overall litigation related to the Formosa plant incident.

Formosa, the plant owner and operator; (2) Rivera, the forklift driver; (3) Rivera's employer, HP Services, L.P., and management by H&P LLC ("HP Services"), a contractor working at the Formosa plant; (4) U.S. Contractors, Ltd., U.S. Contractors Management, LLC, and U.S. Contractors Merger, LLC ("U.S. Contractors"), another contractor working at the Formosa plant; and (5) Kellogg Brown & Root, LLC, and M.W. Kellogg Constructors, Inc. ("KBR"), the plant designer. After a trial that lasted over a month in March 2009, the jury returned a taking-nothing verdict as to all six Plaintiffs. Plaintiffs appealed.

## II. EVIDENTIARY ISSUES

### A. Standard of Review

The admission and exclusion of evidence is within the trial court's sound discretion. *See Bay Area Healthcare Group Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1994). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The trial court's ruling should only be reversed if it was arbitrary or unreasonable. *See id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To constitute reversible error, this Court must find that the district court's errors probably caused the rendition of an improper judgment or prevented Plaintiffs from properly presenting their case. *See Bay Area Healthcare*, 239 S.W.3d at 234; *see also*

TEX. R. APP. P. 44.1.  The complaining party must show that, when the record is reviewed as a whole, the judgment turns on the particular piece of evidence excluded or admitted.  *See City of Brownsville*, 897 S.W. 2d at 753-54.  The reviewing court then determines whether the case turns on the evidence excluded by reviewing the entire record.  *Id.* at 754.  Error in exclusion of evidence does not require reversal if excluded evidence is cumulative of other evidence.  *See Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995).

## B.     The Exclusion of the Taproot Incident Report

### 1. The Taproot Incident Report

The record shows that, following the plant fire and explosions, defendants Formosa, U.S. Contractors, and HP Services (but not KBR) appointed various employees to a group to conduct a post-accident investigation.  According to the testimony of Darrell Loewe, a lead supervisor at Formosa and the team leader of the group, the purpose of this ten-member team was to investigate the causes of the incident.  Each team member had a different expertise to help determine the underlying circumstances surrounding the fire and explosions.

Loewe testified that his team used Taproot software to generate a report documenting their investigation.  Taproot software is a computer program that is commonly used in the petrochemical industry.  Loewe stated that he, as well as other members of his team, were trained and certified in using the software.  He explained that although the Taproot report indicates causal factors of the incident, these factors are

4

determined by the team as a result of the information they gather. The Taproot software also issues a "Corrective Actions Report" with recommendations on how to improve plant functions. He explained that "we look into the incident in a way that we could possibly eliminate it from happening again or at least mitigate a situation should it ever develop again."

Plaintiffs sought to admit the final Taproot Incident Report, claiming it was "undoubtedly [their] best item of evidence" because it would demonstrate that Formosa, U.S. Contractors, and HP Services agreed with many of Plaintiffs' theories of causation. The trial court, however, excluded the report from evidence. In a hearing outside the presence of the jury, the trial court explained its reasoning for the exclusion:

> What I'm concerned about is the existence of a post-accident investigation by a Defendant that includes recommendations, whether they are implemented or not, which I think would be tantamount to subsequent remedial measures. That doesn't mean that those individuals that were involved in this team, who have knowledge that is relevant to this case either through, you know, direct experience with the actual fire or explosion, or from working out at the plant, similar conditions. That doesn't mean that you can't call them to testify and ask them about procedures that were ongoing, for example, or opinions about causation without a reference to the investigation. That's what I'm concerned about is the jury finding that or hearing that there was an investigation after the accident and that the investigation had these findings and conclusions and recommendations.

Plaintiffs claim the exclusion of the Taproot report was error for several reasons: (1) the report was not a subsequent remedial measure; (2) assuming it was a subsequent remedial measure, it should have been admitted to show that certain safety measures were feasible; (3) it could have impeached the testimony of Formosa witness

5

Leonard Tung; and (4) it did not unfairly prejudice the Defendants. We analyze these issues in turn.

**2. Analysis**

**a. Subsequent Remedial Measures**

Texas Rule of Evidence 407 addresses subsequent remedial measures:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in the product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

TEX. R. EVID. 407(a). "Rule 407(a) embodies the well-established policy that parties should not be discouraged from making safety improvements after an accident because those improvements may be used against them as evidence of their own negligence." *See Brookshire Bros. v. Lewis*, 911 S.W.2d 791, 796 (Tex. App.—Tyler 1995, writ denied).

Plaintiffs argue that the Taproot report is admissible because it is merely an investigative report and does not indicate any remedial changes Formosa might make. We disagree with Plaintiffs' assessment. The testimony of Loewe indicated that the Taproot Incident Report's purpose was to remedy conditions so the accident would not occur again. According to Loewe, the program did not determine fault, assign blame, or assess percentages of responsibility. Further, the report issued eight specific

6

Corrective Actions which can be considered subsequent remedial measures. Later in the report, there are two tables which listed each proposed Corrective Action and the department or persons responsible for implementing it and spaces for the implementation due date and completion date.

We hold that the trial court did not act without guiding rules or principles when it determined that the Taproot Incident Report was inadmissible as a subsequent remedial measure. *See E.I. Du Pont*, 923 S.W.2d at 556; *see also* TEX. R. EVID. 407.

**b. Proof of Feasibility**

In the alternative, Plaintiffs argued that the Taproot Incident Report should have been admitted because it was offered for another purpose—to show the feasibility of certain precautionary measures. *See* TEX. R. EVID. 407. Plaintiffs specifically mention that "Taproot would have directly undercut Defendants' claims that protecting the process piping was not feasible. . . ." They aver that the Taproot report was necessary to counter the overwhelming testimony from Formosa employees who testified that the implementation of such piping would be dangerous, complicated, or impractical.

However, our review of the Taproot Incident Report does not reveal that this piping was mentioned, or that emergency isolation valves (EIV's), remote control valves, or any other changes to the process piping or valves were mentioned. Therefore, the report cannot be used to show feasibility. Accordingly, we find that the trial court was within its discretion to exclude the report for this reason. *See Bay Area Healthcare*, 239 S.W.3d at 234. It did not act unreasonably or arbitrarily. *See Downer*, 701 S.W.2d at

7

241–42.

### c. Impeachment Evidence Against Formosa Witness Leonard Tung

Leonard Tung, a Formosa Section Manager in the Olefins II unit and a member of the Taproot investigation team, testified at trial that he had seen a forklift driver driving "carelessly and erratically" before the date in question, but he denied knowing that this forklift driver was Rivera. Plaintiffs argued that the Taproot report should have been admissible for the limited purpose of impeaching Tung, as he apparently testified earlier that he knew the careless driver was Rivera.

We find this argument unpersuasive for two reasons. First, Plaintiffs did not attempt to offer the relevant page or pages of the Taproot report that might have impeached Tung; instead, they insisted on offering the entire report. *See* TEX. R. EVID. 105(b) ("When evidence . . . is excluded, such exclusion shall not be a ground for complaint on appeal unless the proponent expressly offers the evidence for its limited, admissible purpose. . . ."). The trial court was thus within its discretion to deny this overbroad request. *See Bay Area Healthcare*, 239 S.W.3d at 234. Second, error in excluding evidence is harmless where there is cumulative evidence to the same effect. *See Whitener v. Traders and Gen. Ins. Co.,* 155 Tex. 461, 289 S.W.2d 233, 236 (1956); *Bullard v. Universal Underwriters, Ins. Co.*, 609 S.W.2d 621, 626 (Tex. Civ. App.—Amarillo 1980, no writ). Here, there was indirect testimony from Loewe which brought Tung's credibility as a witness into question:

> Q. [Counsel]        Mr. Loewe, did anybody from Formosa ever tell you
> that they saw Mr. Rivera driving a forklift erratically

prior to this October 6th, 2005 [incident]?

. . . .

A. [Loewe]        Yes.

Q. [Counsel]      And that person that told you that he saw Mr. Rivera driving erratically prior to October 6 th, 2005 was Mr. Tung, Mr. Leonard Tung?

A. [Loewe]        That's correct.

In light of the foregoing, we conclude that the trial court did not act arbitrarily or unreasonably when it denied the admission of the Taproot report to impeach Tung. *See Downer*, 701 S.W.2d at 241–42.

### d.  No Unfair Prejudice

Plaintiffs also argued that the Taproot Incident Report was admissible because its probative value outweighed the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. However, the record shows that KBR did not have any of its employees on the Taproot investigative team. Admission of the report could have misled the jury or caused confusion about KBR's participation or liability in this regard. *Id.* Further, the issue of cumulative evidence is relevant in light of the fact that the trial court mentioned that the Taproot team members could be called as witnesses. The trial court stated that the Taproot team participants could testify regarding their "direct experience with the actual fire or explosion, or from working out at the plant," "procedures that were ongoing," and their "opinions about causation." Four members of

the ten-member team did testify at trial (Loewe, Tung, Eugene Rease, and Vince Means), and two other team members (Matt Heibel and Bob Kotrla) had their depositions read at trial. Because of these considerations, we hold that the trial court reasonably excluded the Taproot Incident Report on this basis. *See Bay Area Healthcare*, 239 S.W.3d at 234

We overrule Plaintiffs' first issue.

## C. The Exclusion of the OSHA Citations and Notices of Penalty

By their second issue, Plaintiffs argue the trial court erred when it failed to admit the OSHA Citations and Notices of Penalty against Formosa. Plaintiffs contend that the OSHA citations should have been admitted because: they are generally admissible under Texas Rule of Evidence 803(8); Defendants opened the door on their cross-examination of Roger Craddock; their probative value outweighed the danger of unfair prejudice; and this Court should hold to our precedent in *Valenzuela v. Heldenfels*. *See* No. 13-04-241-CV, 2006 Tex. App. LEXIS 7122, at *7 (Tex. App.—Corpus Christi Aug. 10, 2006, no pet.) (mem. op.).

Assuming without deciding that the trial court did not abuse its discretion, after a careful review of the OSHA citations and notices of penalty, we find that the information contained within them was cumulative of other evidence presented at trial. *See Williams Distrib. Co.*, 898 S.W.2d at 817. Accordingly, any possible error in the exclusion of this evidence would have been harmless. *See Whitener*, 289 S.W.2d at 236. We overrule this issue.

10

**D.    Evidence Regarding Failure to File Workers' Compensation Claims**

Plaintiffs, in their third issue, argue that the trial court erred when it admitted evidence regarding their failures to file worker's compensation claims.    Plaintiffs initially filed a motion in limine to prevent the parties from discussing this matter.    The trial court granted the motion, but clarified its ruling as follows:

> I think at this time the way I want to handle this is to grant this motion as to the language ["]worker's comp claim["] or ["]worker's comp insurance.["]    I think the defense can say, did you make a claim against your employer for these injuries and leave it at that at this time.    If the door is opened because of, you know, financial inability to do this or that, then we can revisit this and they can get into it.

The record shows, however, that most of the Plaintiffs cited financial difficulties as the reason for not immediately seeking health care during their testimonies at trial.    For example, Shannon admitted, "I'm poor.    I can't afford a doctor."    Mayorga testified, "I didn't have the money to go see the doctor."    We thus hold that it was within the trial court's discretion to determine that the failure to file worker's compensation claims became relevant when Plaintiffs opened the door regarding their inability to seek health care immediately.    We overrule Plaintiff's third issue.

**E.    The Exclusion of Social Security Disability Findings**

By their fourth issue, Plaintiffs contend the trial court erred when it excluded the social security disability findings for Plaintiffs Guajardo and Belmarez.

**1. Guajardo Disability Finding**

Plaintiffs argued that Guajardo's Social Security disability finding should have been admitted to counter Defendants' assertions that Guajardo's disability status was

based on his diabetes and hypertension, not the injuries he sustained during the Formosa plant incident.

A review of this document, however, shows that it is an uncertified copy of Guajardo's disability findings from the Social Security Administration. As such, it is hearsay. *See* TEX. R. EVID. 801(d) ("hearsay is a statement . . . offered in evidence to prove the truth of the matter asserted."). The record does not show, and we do not find, any references to where Plaintiffs may have laid a proper predicate to show that the proffered document could fit under a hearsay exception, such as a business record. *See id.* at R. 803(8). In response to Plaintiffs' contention that the document was not hearsay but rather a prior consistent statement, we find nothing in the document indicating that Guajardo was cross-examined at his disability hearing as required by Texas Rule of Evidence 801(e)(1)(B) *See id.* at R. 801(e)(1) (holding that a statement can be considered a prior consistent statement if "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement . . . ."). It is also not clear whether the disability finding is Guajardo's "statement," as it is a document issued by a federal agency and not Guajardo himself. Finally, because the document was not certified, its authenticity was at issue. *See id.* at R. 902(4).

For all of these reasons, the trial court was within its discretion to exclude the foregoing document. *See Bay Area Healthcare*, 239 S.W.3d at 234.

**2. Belmarez Disability Finding**

Plaintiffs further argue that the trial erred in excluding the Belmarez disability

12

finding, but this exhibit also proves problematic. The proffered exhibit consists of two letters—one dated March 20, 2009, and the other dated April 21, 2009. Neither letter is certified, which again calls into question the issue of authenticity. *See* TEX. R. EVID. 902(4). Furthermore, the second letter appears to be missing pages—pages two, four, seven, and nine are absent from this nine page letter.

We hold that the trial court did not act arbitrarily or unreasonably in excluding both the Guajardo and Belmarez disability findings. *See E.I. du Pont*, 923 S.W.2d at 556; *Downer*, 701 S.W.2d at 241–42. We overrule Plaintiffs' fourth issue.

### III. JURY ARGUMENT ISSUE

### A. Standard of Review and Applicable Law

By their fifth and final issue, Plaintiffs complained that the trial court erred when it allowed jury argument regarding Plaintiffs' counsel's character, professional ethics, and integrity, which caused incurable error.

During closing argument, attorneys may argue the facts and reasonable inferences, may use hyperbole and other figures of speech, and may attack the credibility of an opposing party's witnesses, evidence, and positions. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 838 (Tex. 1979). In the case of improper jury argument, the complainant has the burden of proof to establish that an error: (1) occurred; (2) that was not invited or provoked; (3) that was preserved by an objection, motion to instruct, or motion for mistrial; and (4) was not curable by an instruction, prompt withdrawal of the statement, or an admonishment from the judge. *Id.* at 839. The complainant must

13

also prove that the argument by its nature, degree, and extent constituted reversibly harmful error. *Id.* All the evidence must be examined to determine the argument's probable effect on a material finding. *Id.* From all these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Id.*

Incurable harm from improper argument is rare. *Id.*; *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 681 (Tex. 2008). Argument is incurable only when it is so far outside the record that the court determines that the jury more than likely decided the case on prejudice rather than evidence. *See Living Ctrs.*, 256 S.W.3d at 681. For example, appeals to racial prejudice adversely affect the fairness and equality of justice rendered by courts because they improperly induce consideration of a party's race to be used as a factor in the jury's decision. *See id.; TXI Transp. Co. v. Hughes,* 306 S.W.3d 230, 243–45 (Tex. 2010). Further, accusing the opposing party of manipulating a witness, without evidence of witness tampering, can be incurable, harmful argument. *See Howsley & Jacobs v. Kendall,* 376 S.W.2d 562, 565–66 (Tex. 1964). However, critical comments about opposing counsel are not necessarily improper or incurable. *See Casas v. Paradez*, 267 S.W.3d 170, 184 (Tex. App.—San Antonio 2008, pet. denied).

**B.    Analysis**

Plaintiffs complain of several comments made by Defendants' attorneys during closing argument. For example, Plaintiffs' counsel considered the following statement

14

about their expert, Edward Ziegler, harmful: "Ziegler is a jukebox expert . . . . But guess what? He didn't get paid all that money. What he did was he kept a stake in the outcome of the litigation." During trial, the jury heard evidence that a note on one of Ziegler's bills stated that he agreed to defer payment until the case settled or went to trial, although Ziegler later denied this arrangement during his testimony. The jury also learned that, at the time of trial, Ziegler had only been paid $35,000 out of the $221,000 billed for the case.

Plaintiffs further complained about Defendants' repeated statements that Plaintiffs' counsel had sent their clients to Robert Moers, M.D. for medical examinations. However, all of the Plaintiffs testified that they sought treatment from Dr. Moers because their attorneys had referred them to him, and they also admitted that their attorneys paid for their medical bills. We also note the following statement from Plaintiffs' counsel's opening argument:

> The evidence will show that over the past three years my firm has helped our clients as much as we can. We've helped them manage their injuries. We've helped them manage with their pain. We've helped them with their suffering and all the things that go along with it.

> Now, the evidence will show that we asked doctors, or a doctor to evaluate these clients before we filed a lawsuit. Now the Defense, we suspect, are going to try and point the finger. We wanted to make sure before these clients were brought before you and before these clients filed a lawsuit that these clients had legitimate injuries and the evidence will show that they did.

Upon review of the record, we conclude that defense counsel's arguments were supported by the facts and inferences from the trial record, and did not cause incurable

15

harm. *See Standard Fire Ins. Co.*, 584 S.W.2d at 838. Counsel is allowed great latitude to discuss the facts and issues of a case, and that is what occurred here. *See Ramirez v. Acker*, 138 S.W.2d 1054, 1055 (Tex. 1940). We overrule issue five.

## IV. CONCLUSION

Having overruled all of Plaintiffs' issues on appeal, we affirm the judgment of the trial court.

GINA M. BENAVIDES
Justice

Delivered and filed the
30th day of September, 2011.

16