**Alejandro GALVAN, Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Appellee.**

**No. 9330.**

Court of Appeals of Texas, Amarillo.

Feb. 19, 1982.

Rehearing Denied March 16, 1982.

Mark Smith & Associates, Ivan R. Williams, Lubbock, for appellant.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

## ON JURISDICTION OF THE APPEAL

REYNOLDS, Chief Justice.

Alejandro Galvan has attempted to appeal from the take-nothing judgment rendered in his action to recover workers' compensation benefits from United States Fire Insurance Company, the insurance carrier for Galvan's employer. Because the trial court adjudged that Galvan is entitled to appeal without paying costs of appeal or giving security therefor on an incorrect theory, we abate the appeal to afford Galvan the opportunity to establish in the trial court his right to appeal.

Galvan suffered the take-nothing judgment, rendered 6 November 1980, when he failed to persuade the jury by a preponderance of the evidence that he sustained an injury. At the time Galvan filed his motion for new trial on 12 November 1980, he also filed an affidavit of his inability to pay the costs of appeal, or any part thereof, or to give security therefor. On the same day, the clerk of the district court, acting through her chief deputy, filed a contest, verified by oath, to Galvan's affidavit of forma pauperis without certifying that notice thereof was given to Galvan. The following day, the insurance carrier filed its unsworn denial that Galvan was entitled to proceed in the cause or the appeal thereof as a pauper. Notice of this opposition to Galvan's affidavit was given to him on the same day.

The court set a hearing on the matters relating to Galvan's motion for new trial and pauper's affidavit for 25 November 1980. On that date, the carrier again filed its opposition to Galvan's affidavit of forma pauperis. This contest, identical in language to the carrier's earlier filing except for the date, was verified by affidavit. Notice to Galvan was certified.

Later, on 9 December 1980, the court heard the matters previously set for hearing and signed two orders. By one order, the court overruled the motion for new trial; by the other order, the court adjudged and decreed

> that Plaintiff's [Galvan's] Affidavit of inability to pay costs of appeal, filed pursuant to Rule 355, Texas Rules of Civil Procedure, be, and is hereby, granted *for the reason that a properly verified contest was not filed within the ten-day period* (emphasis added); . . .

Thereafter, Galvan initiated this appeal in forma pauperis to complain of the jury's failure to find that he received either an injury or an injury to his arm.

We are confronted with the threshold question whether we may exercise jurisdic-

tion over the merits of the appeal. The insurance carrier proposes, and Galvan opposes, the dismissal of the appeal for lack of jurisdiction.

The carrier's proposal stems from its position that Galvan did not qualify to appeal in forma pauperis because, notwithstanding the court's ruling, Galvan's affidavit was timely contested, both by the clerk and the carrier, as a matter of law, and Galvan failed to offer any proof of the allegations in his affidavit. To the contrary, Galvan argues he has the right to appeal in forma pauperis without proving his allegations because no proper contest was timely made to his affidavit; or, alternatively, if his affidavit was properly contested, the court was entitled to judicially notice from the trial evidence his inability to pay costs of appeal, or any part thereof, or to give security therefor. However, we conclude that the threshold question is and will remain premature until the ascertainment of jurisdictional facts in the trial court.

Rule 355 [1] authorizes an appeal without the payment of any costs thereof or the giving of security therefor by one who actually is unable to do so. The rule, which has been amended from time to time,[2] is applied from the effective date of its amended form to control the steps taken subsequent thereto in pending litigation. *See Hoppe v. Hughes*, 577 S.W.2d 773, 775 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.). At all times material to the appellate action taken in this cause, the rule read:

(a) When the appellant is unable to pay the costs of appeal or give security therefor, he shall be entitled to prosecute an appeal by filing with the clerk his affidavit stating that he is unable to pay the costs of appeal or any part thereof, or to give security therefor.

(b) The appellant or his attorney shall forthwith give notice of the filing of such affidavit to the opposing party or his attorney.

(c) Any interested officer of the court or party to the suit, may, by sworn pleading, contest the affidavit within ten days after the giving of such notice whereupon the court trying the case (if in session) or (if not in session) the judge of the court or county judge of the county in which the case is pending shall set the contest for hearing, and the clerk shall give the respective parties notice of such setting.

(d) Upon such hearing the burden of proof shall rest upon the appellant to sustain the allegations of his affidavit.

(e) Where no contest if (*sic*) filed in the allotted time the allegations of the affidavit shall be taken as true.

(f) Where the appellant is able to pay or give security for a part of the costs of appeal he shall be required to make such payment or give such security (one or both) to the extent of his ability.

■ Accordingly, when Galvan filed his affidavit, it became subject to contest by the insurance carrier, Rule 355(c), and by the district clerk, *McCartney v. Mead*, 541 S.W.2d 202, 204 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ), or by her deputy. *Hannah v. Walker*, 409 S.W.2d 949, 950 (Tex.Civ.App.—Dallas 1966, mand. overr.). Thus, the clerk's opposition, filed the same day, was a timely contest, Rule 355(c), unless it is vulnerable to Galvan's complaints of lack of notice and the absence of an "affidavit."

It avails Galvan nothing to complain that the clerk did not give him notice of her timely filed opposition to his affidavit. The rule has no requirement for notice of the filing of a contest, Rule 355(c), the absence of which invokes the general rule that each party is required to take notice of all pleadings filed in the cause.[3] *Stark v. Dodd*, 76 S.W.2d 865, 867 (Tex.Civ.App.—Beaumont 1934, no writ). Separate notice that a con-

---

1. All references to rules are to the Texas Rules of Civil Procedure.

2. The latest amendment of the rule was effective 1 January 1981.

3. Despite the general rule of notice, it was indicated on submission that the parties were not, and assumingly the trial court was not, aware of the clerk's contest until the appellate record was prepared.

test has been filed, albeit a proper action, serves no vital function inasmuch as notice of the contest is imparted by the mandatory requirement for notice of the setting of a contest for hearing. Rule 355(c).

No more availing is Galvan's assertion that the clerk's contest was a nullity on the rationalization that the instrument was not a "sworn pleading" in the absence of an "affidavit." The clerk's contest was verified by oath. Rule 355 is silent as to the form of a traverse of an affidavit of inability to pay costs of appeal or to give security therefor; so, for a contesting instrument to have probative force, it is only necessary that it be verified by oath. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 382 (1945). Thus, the clerk's timely filed "sworn pleading" was a proper contest of Galvan's affidavit, Rule 355(c), and the court erred in ruling otherwise.[4]

Given the contest, the rule imposed on Galvan the burden to sustain the allegations of his affidavit. Rule 355(d). To discharge the burden, Galvan had to persuade the trial court by a preponderance of the evidence that, even though he wanted to pay the costs of appeal and had made good-faith efforts to do so, he still was unable to pay the costs, or any part thereof, or to give security for the costs. *Pinchback v. Hockless*, 139 Tex. 536, 164 S.W.2d 19, 20 (1942).

█ Concededly, no proof of the allegations in Galvan's affidavit was received by the trial court at the 9 December 1980 hearing. In lieu thereof, Galvan urges that a preponderance of the trial evidence shows his inability to pay any costs of appeal and, consequently, the trial court was entitled to take judicial notice of the evidence without conducting another evidentiary hearing in ruling on the contest. Nevertheless, this

situation is not one agreeable to the principle of judicial notice, 1 R. Ray, Texas Law of Evidence § 151 (3d ed. 1980); and, aside from that reality, it is clear that Galvan did not request the court to, and the court did not, take judicial notice of the trial evidence in making its ruling. In these circumstances, this Court should not, and will not, resort to the doctrine of judicial notice, *Id.* at § 155, particularly where Rule 355 commits the trial court to initially determine the contest.

█ Absent proof of the allegations in Galvan's affidavit, the carrier submits there is no alternative to sustaining the contest, *King v. Payne*, 156 Tex. 105, 292 S.W.2d 331, 336 (1956), and dismissing the appeal for lack of appellate jurisdiction. *Winn v. Federal Land Bank of Houston*, 164 S.W.2d 864, 866 (Tex.Civ.App.—Galveston 1942, writ ref'd). Yet, the record is silent as to whether Galvan was prepared to offer proof of his allegations and was deprived of the opportunity by the court's erroneous ruling of no contest. However, a silent record should not be determinative of an appeal in forma pauperis. *See Smirl v. Globe Laboratories*, 144 Tex. 41, 188 S.W.2d 676, 677 (1945).

█ In an appropriate situation, this Court has the power, suitably exercised, to ascertain such matters of fact as may be necessary in the proper exercise of its jurisdiction. Rule 434 provides, among other things,

> that if the erroneous action or failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of . . . Appeals, and be such as may be corrected by the judge of the trial court, then . . . the appellate court shall direct the said judge to correct

---

4. Having determined that the clerk contested Galvan's affidavit, it becomes unnecessary for us to decide whether the affidavit also was contested by the insurance carrier. In this connection, we informationally record that Galvan argues, and apparently the trial court concluded, that because the carrier did not file a sworn pleading within ten days after Galvan gave notice of the filing of his affidavit, the carrier did not timely contest the affidavit. *See, e.g.,*

*Coleman v. Long*, 407 S.W.2d 279, 281 (Tex. Civ.App.—Dallas 1966, no writ). Oppositely, the carrier argues, *inter alia*, that its verified contest became timely when Galvan's affidavit, prematurely filed under the provisions of Rule 356(b), is deemed to have been filed, by the command of Rule 306c, on the date of, but subsequent to, the overruling of Galvan's motion for new trial, on which date the carrier's verified contest was on file.

the error, and thereafter the Court of . . . Appeals shall proceed as if such erroneous action or failure to act had not occurred.

Hence, where it is possible, as here, to afford the opportunity to establish the right to appeal, the opportunity should be provided in order that the cause may be disposed of on its merits. *Accord, Smirl v. Globe Laboratories, supra,* 188 S.W.2d at 677–78.

█ Therefore, we abate the appeal until the trial court can determine the contest and the appellate record is supplemented to show the result thereof. In this connection, it should be noted that Rule 355(e) was amended, effective 1 January 1981, to provide that if no ruling is made on the contest within ten days after its filing, the allegations of the affidavit shall be taken as true. Recently, we noted in *Guetersloh Grain, Inc. v. Wright,* 618 S.W.2d 135, 136 (Tex. Civ.App.—Amarillo 1981, no writ), that the rule's time limit is mandatory rather than directory.

Accordingly, it being now determined that a proper contest was filed to Galvan's affidavit, the trial court is directed to schedule a hearing on the contest within ten days after the receipt of this opinion. Following the hearing, the clerk of the trial court is directed to prepare and submit a supplemental transcript containing the new matters bearing on Galvan's right to appeal. This Court then will be able to determine the extent of its jurisdiction over the appeal.

## ON THE MERITS

Pursuant to our 31 December 1981 opinion, the appellate record has been supplemented to include the trial court's adjudication that Alejandro Galvan is entitled to appeal in forma pauperis. There being no challenge to the court's ruling, our jurisdiction over the merits of the appeal is now established.

In the action underlying the appeal, Alejandro Galvan sued to recover workers' compensation benefits from United States Fire Insurance Company for an accidental injury he sustained on 9 November 1976 while in the course of his employment for J. T. "Red" Roberson Dirt & Paving Company. The jury answered only two of the special issues submitted to it. By answering "no" to those issues, the jury failed to find either that Galvan received an injury on or about 9 November 1976 or that he received an injury to his left arm on that date. The court rendered a take-nothing judgment on the jury's verdict.

█ Galvan's only valid appellate challenges to the judgment are his factual insufficiency points of error directed to the jury's "no" answers.[5] By these points, he contends that the jury's negative answers are against the great weight and preponderance of the evidence inasmuch as his injury was overwhelmingly shown. Having reviewed and considered all of the evidence, which is summarized below as it relates to the issues of injury, under the *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973),

---

**5.** Recognizing that the jury returned negative answers to the issues on which he had the burden to secure affirmative findings, Galvan nevertheless attempts to attack the jury's failures to find any injury by two "no evidence" points of error. Under the points, Galvan does not claim, much less try to demonstrate, that he conclusively established either an injury or an injury to his left arm; instead, proceeding from the erroneous assumption that the jury's "no" answers are affirmative findings that he did not suffer any injury, he submits that there is no evidence to support the jury's non-injury "findings." However, each "no" answer is, by proper interpretation, simply a failure or refusal by the jury to find from a preponderance of the evidence the fact of any injury which Galvan had the burden to affirmatively establish.

Stated another way, Galvan failed to discharge his burden of proof. The interpretation is particularly applicable because the court charged the jury that

> Questions to be answered "Yes" or "No," should be answered "Yes" if you so find from a preponderance of the evidence; otherwise, answer "No."

Conformably, the jury's "no" answers, *i.e.,* its failures to find, need not be supported by evidence. *Bullard v. Universal Underwriters Ins. Co.,* 609 S.W.2d 621, 624 (Tex.Civ.App.—Amarillo 1980, no writ); *Lovato v. Ranger Ins. Co.,* 597 S.W.2d 34, 36 n.1 (Tex.Civ.App.—Amarillo 1980, writ ref'd n. r. e.). Hence, Galvan's no evidence points of error present nothing for review.

standard of review, we are unable to fault the jury's answers and, therefore, we affirm the take-nothing judgment.

Going to a jobsite on 9 November 1976, Galvan was driving a small tractor, equipped with a back blade, on a public street in Lubbock when the tractor was struck from the rear by a pickup truck. Galvan said he was thrown forward, striking the steering wheel with the left side of his body. Although Galvan stated that he was feeling pain, he drove the tractor, which was not damaged, to the jobsite.

When he arrived, Galvan told Tommy Roberson, the son of J. T. "Red" Roberson, about being rear-ended. Tommy Roberson reported that Galvan said he was not hurt. Galvan continued to work that day.

The next day, Galvan told J. T. Roberson that a pickup had hit the tractor and that, so Galvan testified, he had gotten hurt, being hit on the chest, the shoulder, and in the back. It was J. T. Roberson's testimony that, in response to his inquiry whether Galvan was hurt, Galvan pulled up his coat sleeve on his left arm and said it was bruised just above the wrist. Roberson noticed a scratched place, but no bruise. According to Roberson, he asked Galvan if he wanted to go to a hospital or see a doctor, and Galvan said he was not hurt that much.

Galvan continued to work, with some days off, until 22 January 1977. He confirmed that his shoulder was hurting, but not as much, and he had to work. A neighbor, Gloria Ruiz, gave testimony that Galvan came to her house after the accident and said he had hurt his shoulder in an accident and was in pain. Abraham Morales, the son of a family with whom Galvan has lived for several years, testified that Galvan, after he was injured, complained of pain in his chest, shoulder and back.

Following the accident, J. T. Roberson had the occasion to work with Galvan. He testified that Galvan never complained with any kind of problem with his left shoulder, or neck or back. Tommy Roberson worked with Galvan on a daily basis. His testimony was that he did not observe Galvan having any problems doing his work, and that Galvan never complained about being hurt in the shoulder, or the arm or back.

Galvan did not report for work on 22 January 1977. His version is that his shoulder was hurting to the point he could not work, and he had told J. T. Roberson that his shoulder was hurting and he was going to quit. J. T. Roberson said Galvan just did not report for work, he received no communication from him, and he was given no reason why Galvan did not report for work or why he was quitting work.

On 1 February 1977, Galvan saw Dr. Robert C. Knight, a chiropractor. The doctor received from Galvan a history of the injury from the tractor-pickup accident. Galvan's chief complaints were pain and stiffness in the neck, pain and inability to elevate his shoulder, and radiation of pain through muscles in his chest and around the shoulder blade and into his left arm. In his initial examination, Dr. Knight found the condition of the left arm and shoulder to be in a chronic, as opposed to an acute, stage in view of the fact that the injury had occurred at least thirty days before the examination. The doctor's X-rays showed degenerative arthritis, a condition taking place long before 9 November 1976. Although the doctor said the problem with Galvan's left shoulder "probably" related back to the November accident, it was his opinion that the blow Galvan had sustained aggravated the pre-existing arthritic condition, even then admitting that severe degenerative arthritis can cause the exact problem he found in Galvan.

The doctor treated Galvan eight times with heat, ultrasound, cervical traction and spinal manipulation of the neck. Glavan's left shoulder condition did not improve with the treatment. Convinced from the lack of progress that there was an injury in the shoulder joint, Dr. Knight referred Galvan to an orthopedic surgeon on 16 February 1977.

More than seven months later on 27 August 1977, Galvan saw Dr. Ray E. Santos, an orthopedic surgeon. Galvan gave Dr.

Santos a history of the tractor-pickup collision injuring his left shoulder. By his first examination, which included X-rays, the doctor found some degenerative arthritis in the shoulder joint, and gained the impression that Galvan had a bicipital tendinitis, an inflammation of a tendon producing pain, and had sustained a traumatic injury to his left shoulder.

Galvan returned to Dr. Santos on October 31 for a re-evaluation. Because Galvan was having considerable difficulty with his shoulder, the doctor suggested hospital admittance for a manipulation of the shoulder. The procedure was performed on November 1 through 3 and, when Dr. Santos saw Galvan on December 2, the shoulder was doing well. On 13 January 1978 when Galvan returned for re-evaluation, he had pain and difficulty with motion in his left shoulder. The doctor admitted him for January 19 surgery on the left shoulder to provide more laxity and ability to move it. However, the deltoid muscle attached to the clavicle during the surgery for reinforcement came loose, and an August 7 surgery was performed in an attempt to reattach the deltoid. The success of this surgical procedure is, in general, "very poor" and, in this instance, the surgical repair failed to hold.

Galvan was last seen on 19 September 1978 by Dr. Santos, the last doctor consulted by Galvan before the trial on 27 October 1980. It was Dr. Santos' appraisal that while Galvan was relatively pain-free, he does not have as much active function of his shoulder as the doctor would like for him to have. Acknowledging that trauma is capable of aggravating pre-existing arthritic conditions, the doctor assigned a fifty percent permanent impairment and loss of physical function to the whole left arm, and a twenty to twenty-five percent permanent impairment to the body as a whole. It was his opinion that Galvan's disability was caused or aggravated by his injury of the left shoulder and subsequent surgery.

However, Dr. Santos conceded that absent the history Galvan gave him, he could not tell, based upon reasonable medical probability, whether Galvan's particular injury and the treatment given was in any way related to trauma, saying, "[I]t could be compatible with degenerative arthritis of his shoulder, or as a pure entity."

It was recorded that while Galvan was working for another employer in March of 1974, he fell, sustaining neck and left shoulder injuries. He was attended by two physicians and was hospitalized. Surgery was not performed. Galvan stated that he was out of work for five or six months because of the injury, after which he went to work for another employer, and never had any problem until the tractor-pickup collision.

There is, of course, record evidence, albeit conflicting and contradictory, which, from a partisan viewpoint, could result in a finding, or a failure to find, that on 9 November 1976 Galvan sustained an accidental injury.[6] No fixed rule of evidence dictates the requirements for the establishment of an injury; thus, the inquiry here is whether the jury's failure to find any injury is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Because the evidence on the issues of injury was conflicting and contradictory, it was for the jury to resolve the conflicts and contradictions in arriving at the answers the jury concluded were the most reasonable under the evidence. To do so, the jury necessarily was required to judge the credibility of the witnesses and the weight to be given their testimony, *Sanchez v. Texas Emp. Ins. Ass'n*, 618 S.W.2d 837, 841 (Tex. Civ.App.—Amarillo 1981, writ ref'd n. r. e.), the jury being privileged to believe all or part or none of the testimony of any one witness. *Bullard v. Universal Underwriters Ins. Co.*, 609 S.W.2d 621, 625 (Tex.Civ.App. —Amarillo 1980, no writ).

---

**6.** The court instructed the jury that: "INJURY" means damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm.

The jury heard Galvan's testimony of a 9 November 1976 injury, the recitation of which was the basis for the testimony of Ruiz and Morales, and the sole predicate for both Dr. Knight's and Dr. Santos' attribution of his condition at the times of their examinations to a 1976 injury. Because Galvan was an interested party-witness, the jury was not required to accept his testimony at face value. *Id.* at 625. The principle is particularly applicable here where Galvan's credibility was challenged by the Robersons' testimony of Galvan's denials that he was hurt and his continued work without complaint, by his admission of a 1974 left shoulder injury which he withheld from Drs. Knight and Santos, both of whom acted with a history of only a 1976 injury and by the doctors' statements that Galvan's condition could be caused by, and in reasonable medical probability was compatible with, his degenerative arthritis established to exist long before 9 November 1976, especially in the absence of the history of a 1976 injury.

Given the state of the evidence with the jury's prerogatives to assay the credibility of the witnesses and the weight of their testimony, the jury could have believed Galvan's testimony, and the supporting testimony referenced thereto, of a 1976 injury; or the jury could have believed, as it did, that the contrary evidence so diluted Galvan's underlying testimony that the jury could not find from a preponderance of the evidence any 1976 injury. The fact that the jury might have found the injury Galvan claims to have sustained does not justify our setting aside the answers the jury concluded were the most reasonable under the conflicting and contradictory evidence. *Id.* at 625.

Consequently, we are unable to fault the jury in failing to find that Galvan sustained any injury in 1976. Galvan's points of error are overruled.

The judgment is affirmed.