Nikki M. JONES, Relator,

v.

The Honorable Lee DUGGAN, Visiting Judge of the County Civil Court at Law No. Three, Harris County, Texas, Respondent.

No. 01–96–01353–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 4, 1997.

---

Betty Clark, Houston, for Relator.

John Lohmann, III, M. Scott Bresk, Houston, for Respondent.

Before SCHNEIDER, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

PER CURIAM.

Relator, Nikki M. Jones, moves for leave to file her petition for writ of mandamus.

### Background

In the underlying action, relator, as the next friend of her son, Brandon Taylor, sued defendants/real parties in interest, E. Blaine Adams and Patrick Falcon, for deceptive trade practices. The trial court entered a judgment in favor of defendants against relator for $9,000 based on the court's finding that relator's suit was groundless and brought in bad faith.

Relator, desiring to appeal the judgment, filed an affidavit of inability to pay costs. Defendants and the county clerk contested relator's affidavit. On November 6, 1996, respondent, the Honorable Lee Duggan, visiting judge in County Civil Court at Law Number Three, Harris County, Texas, held a hearing on the contest, after which he ruled that relator could pay the costs of appeal or post a bond to the extent of $750. Relator brings this mandamus action seeking the vacation of respondent's order.

Relator's testimony at the hearing discloses the following. In 1994, she acquired a 1986 Volvo that is now paid for, but needs about $1,000 in repairs. She has not had these done because she cannot afford it. Relator would not be able to work at all if the car broke down. She could possibly sell her car for $750. She has not tried to borrow funds against it.

In December 1995, she had a permanent job with Tenneco and a part-time job on the weekends with Gallery Furniture. At that time, she purchased, for $74,500, the four-bedroom, two bath home where she is now living by paying $3,500 down and obtaining a mortgage, without a co-signer, to finance the balance. Her monthly house note payments are $936. She has received a letter from the mortgage company saying her payments are past due and giving her information about foreclosure.

In December, relator took a leave of absence from Gallery Furniture. She was unable to return to work there in January 1996, because of a court ordered stipulation of the time at which she had to pick up her daughter, Brittany. In February 1996, Tenneco laid relator off.

In April 1996, the court changed the managing conservatorship of Brittany from relator to Brittany's father, and ordered relator to pay $200 per month toward Brittany's

tuition at Pilgrim Lutheran school. As a result of the custody action, she owes a $300 deposition fee, an amount she cannot recall to her attorney, and a $1,700 court-ordered fee to a psychologist.

For the largest part of the year she has been on unemployment. She has looked for permanent employment, but has been unable to find it. She currently is working a full-time temporary assignment as a secretary in a law office making $14 per hour, before taxes, but she does not know how long the assignment will last. She has no medical insurance.

She is the single mother of two children. Her 17-year old son, Brandon, lives with her, and she receives no child support for him. Brandon goes to school full-time, does not work, and will graduate at the end of the year. As the result of the child custody order, Brittany lives part-time with her father.

Relator is solely dependent on what she can earn in a month to take care of her bills. She currently has $400 in her checking account, not considering her outstanding checks. Her monthly expenses include: $936 house note, $400 food, $400 utilities and insurance, $150 gas, $0–$60 medical, $50 Brandon's school lunches and supplies, $200 Brittany's tuition, $160 installment payment on her washer, dryer, and refrigerator, and $60 for church.

She could not get a loan, and even if she did, she would not be able to repay it because her expenses for necessities exceed her income. The only one she has attempted to borrow money from to pay the costs of appeal is her mother who could not give her such a loan. Her jewelry consists of a Waltham watch, a necklace, and a few rings. She has not gone to a pawn shop to raise funds by using her jewelry as collateral.

The only credit cards she has are for stores, and she cannot get cash advances with them. She spoke with two bonding companies around the middle of October and could not obtain a bond for the costs of appeal because she would not be able to pay the fee.

Contestants put on no controverting evidence.

■ Relator first asserts that the contests of her affidavit by real parties in interest, the County Clerk and the defendants below, were invalid because they were not sworn. In the early 1980's, the former Tex.R. Civ. P. 355, a predecessor to current Tex.R.App. P. 40(a)(3), provided:

> (c) Any interested officer of the court or party to the suit, may by *sworn* pleading, contest the affidavit within ten days....

*Galvan v. United States Fire Ins. Co.*, 629 S.W.2d 209, 211 (Tex.App.—Amarillo 1982, writ ref'd n.r.e) (emphasis added). The *Galvan* case held that the rule meant what it said, that a contest must be sworn. *Id.* at 212.

For the time relevant to this appeal (1996), the applicable rule provides:

> Any interested officer of the Court or party to the suit, may file a contest to the affidavit *within ten days after notice thereof....*

Tex.R.App. P. 40(a)(3)(C). The supreme court, in amending this rule, has omitted the requirement that a contest be sworn. Employing the rule of statutory construction that when the amended version of a statute is inconsistent with the former version of the statute, the amended version is held to have impliedly repealed the former version to the extent of the inconsistency, we conclude that to contest an affidavit of inability to pay costs, it is no longer necessary for the contest to be sworn. *See American Surety Co. of New York v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719 (Tex. Comm'n App.1931, holding approved) ("an amended act is ordinarily to be construed as if the original statute had been repealed, and a new and independent act in the amended form had been adopted in its stead"); *Schott v. Leissner*, 659 S.W.2d 752, 754 (Tex.App.—Corpus Christi, 1983) *affirmed per curiam*, 668 S.W.2d 686 (Tex.1984) ("When the legislature amends a law, it is presumed that it intends to change the law."). Accordingly, we hold the fact that the contests filed by the county clerk and defendants were unsworn did not render them ineffective.

■ Next, relator asserts that she carried her burden of proof to establish her indigency. When a contest is sustained and mandamus is sought to review the ruling, the question is whether an examination of the record as a whole establishes that the trial court abused its discretion. *Cronen v. Smith*, 812 S.W.2d 69, 70 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). In ruling on the merits of the evidence at the trial court level, the test for determining entitlement to proceed *in forma pauperis* is whether the preponderance of the evidence shows that the appellant would be unable to pay the costs of appeal, if she really wanted to and made a good faith effort to do so. *Griffin Indus. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 351 (Tex.1996). To show a clear abuse of discretion, the relator must show that, under the circumstances of the case, the facts and law permit the trial court to make but one decision. *Cronen*, 812 S.W.2d at 70.

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for a trial court's action. Rather, it is a question of whether the [trial] court acted without reference to any guiding rules and principles ... whether the act was arbitrary and unreasonable.

*Id.* at 71. In *Pinchback v. Hockless*, 139 Tex. 536, 164 S.W.2d 19 (1942), the supreme court held:

> Obviously, if a laborer was barely earning the necessities of life for himself and family, ordinarily he should not be required to mortgage his hand tools or household furniture in order to raise funds to pay the court costs. On the other hand if a party has a credit rating that will enable him to borrow the money, *or if he is earning a substantial income, although he is expending it as rapidly as it comes in, or if he owns an automobile or truck or other valuable property, although exempt from execution, which he could mortgage or otherwise dispose of and thereby secure the necessary funds without depriving himself and his family of the necessities of life, he should be required to pay the costs or give security therefor.*

The court heard evidence of relator's debts and that relator's expenses for "necessities" exceeded her income. The court also heard evidence that relator had not attempted to borrow money against her jewelry or car. In *Griffin Industries*, the supreme court held that requiring the person who contended they could not pay the appeal costs (Ms Villegas) to "obtain formal loan rejections would exalt form over substance, as such rejections would 'merely buttress th[e] conclusion that she is financially unable to meet any of the court costs or give security therefor.'" *Griffin Indus.*, 934 S.W.2d at 351.

This case is distinguishable from *Griffin Industries*, however. While Ms. Villegas and relator are alike in that they both own a car worth less than $1,000 and are burdened with debt, they are unalike in their income and assets. At the time of the hearing on the contest to her affidavit of inability to pay costs, Ms. Villegas was unemployed and her only source of income was Social Security benefits of $500 per month. *Id.* at 350. She was living with her daughter and grandson, renting a one-bedroom apartment for $360 a month and paying $60 to $90 per month for utilities. *Id.* She received food through her daughter's food stamp allotment. *Id.* She owned no jewelry. *Id.*

In contrast, relator, living full-time with a 17–year old son and part-time with a daughter, who attended private school, lived in a four-bedroom $74,000 house, paying a monthly mortgage of $936 and monthly utilities of $400. She worked in a law office making $14 an hour and owned jewelry.

■ In a non-jury case, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Thomas v. Thomas*, 852 S.W.2d 31, 34 (Tex. App.—Waco 1993, no writ). The trial court could have reasonably concluded either that relator's monthly expenses for "necessities" could be reduced so that she could pay the appeal costs without depriving her and her family of the necessities of life, or that it was incumbent upon her, using her car and jewelry as collateral, to attempt to borrow the money to pay the costs of appeal from commercial lenders; that she could adjust her

living expenses to afford to make the payments necessary to pay off such a loan.

We cannot say that the facts before the trial judge only permitted him to overrule the contests to relator's affidavit and that he acted without any reference to guiding rules and principles. We overrule relator's motion for leave to file petition for writ of mandamus.

In our previous order, we granted relator's request for a temporary order suspending the time to perfect her appeal. That order is now dissolved and relator has 30 days from the date of this opinion to perfect her appeal.

It is so **ORDERED.**