**SEARS ROEBUCK AND COMPANY,**
Appellant,

v.

**DALLAS CENTRAL APPRAISAL DISTRICT, Appellee.**

No. 05–99–00480–CV.

Court of Appeals of Texas,
Dallas.

Aug. 9, 2000.

---

upheld the inventory values as appraised by DCAD. In thirteen points of error, Sears challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment. Sears also challenges, as a matter of law, the trial court's conclusion that the market value of Sears's inventory was equal to the inventory's book value. We affirm the judgment of the trial court.

## BACKGROUND

DCAD is charged with the duty of appraising property for purposes of assessing ad valorem taxes in Dallas County. Property valuations are determined as of January 1 of the given tax year and are based on the property's market value. The Texas Property Tax Code states that, " ... [T]he market value of inventory is the price for which it would sell as a unit to a purchaser who would continue the business." TEX. TAX CODE ANN. § 23.12 (Vernon Supp.2000).[2] The dispute in this case concerns what constitutes "market value." In appraising the market value of Sears's inventory at numerous locations in Dallas County, DCAD concluded the book value of Sears's inventory was equivalent to its market value. Therefore, DCAD based the appraised value of the inventory on its book value.

Believing the appraised value was excessive, Sears filed a protest with the appraisal district. The Appraisal Review Board held a hearing at which arguments and evidence were presented. The board entered orders determining that the appraisal records were incorrect and ordered DCAD to modify the values of the invento-

Michael R. Garatoni, Kenneth L. Malone, Kliewer, Breen, Garatoni, Patterson, & Malone, Inc., San Antonio, for Appellant.

Jason Clarke Marshall, Nichols Jackson Dillard Hager & Smith, L.L.P., Dallas, for Appellee.

Before Justices OVARD,[1] MOSELEY, and ROACH.

## OPINION

Opinion By Justice MOSELEY.

Appellant, Sears Roebuck and Company ("Sears"), sued appellee, the Dallas Central Appraisal District ("DCAD"), contesting DCAD's ad valorem tax appraisal of Sears's inventory. After a bench trial, the trial court found in favor of DCAD and

---

1. Justice John Ovard was a member of the panel at the time this case was argued and submitted for decision. Justice Ovard retired from the Court on July 31, 2000. Therefore, he did not participate in the issuance of this opinion. *See* TEX.R.APP. P. 41(a) & (b).

2. All section references are to the Texas Property Tax Code, published by Vernon as TEX. TAX CODE ANN.

ries in question to conform with the board's determination of market values. As provided by law, Sears appealed the board's decision to the district court, arguing that the appraised values exceeded the market value of the inventory.

At a trial before the court, Sears took the position that certain reductions should be made to book value to determine the market value of its inventory, including reductions for cost of maintaining warranties; value of brand names; cost incurred to sell the inventory; and physical, functional, and economic obsolescence as indicated by inventory turnover ratios. DCAD took the position that many of the reductions urged by Sears were irrelevant in determining market value. Furthermore, DCAD pointed out that Sears kept the book value of the inventory in accordance with Generally Accepted Accounting Principles ("GAAP"). Under GAAP, inventory is valued on a business's books at the lower of either cost or market value. Therefore, DCAD argued that the book value of Sears's inventory already reflected any reductions for obsolescence necessary to insure its book value did not exceed market value.

Both parties presented evidence to support their claims. The trial court found Sears did not meet its burden to prove that the value of the inventory was different than the value as appraised by DCAD.

In doing so, the trial court determined that some of the evidence offered by Sears and certain testimony elicited from one of Sears's experts was inappropriate, lacked credibility, was unpersuasive, or was speculative. The court held in favor of DCAD, and rendered judgment upholding DCAD's appraised values.

Sears asserts thirteen points on appeal. Generally, these points argue that: (1) the trial court erred as a matter of law in concluding that the book value of Sears's inventory equaled the inventory's market value; (2) under the section of the property tax code concerning the valuation of inventory for ad valorem tax purposes, book value does not equal market value as a matter of law; (3) Sears established, as a matter of law, that the value of its inventory was different than the value as appraised by DCAD; and (4) the evidence was legally and factually insufficient to support the values as found by the trial court.

## DISCUSSION

## I. CHALLENGE TO THE TRIAL COURT'S FINDINGS OF FACT

In points of error one, two, and five through ten, Sears challenges findings of fact eight and twelve through eighteen.[3] Sears challenges findings of fact eight and fifteen arguing that book value cannot

3. Those findings state:

8. According to "GAAP," inventory is recorded at its cost basis, and is thereafter adjusted when the utility of the inventory falls below cost, whether due to physical deterioration, obsolescence, changes in prices [sic] levels or other causes. *Restatement and Revision of Accounting Research Bulletins*, AMERICAN INSTITUTE OF ACCOUNTANTS, *Inventory Pricing: Statement 5*. Thus, when pricing inventories at "lower of cost or market," a loss is recognized "whenever the utility of the goods is impaired by damage, deterioration, obsolescence, changes in prices [sic] levels or other causes."

12. While SEARS contended, and attempted to prove at trial, that deductions from the "book value" of the Inventory for various factors are required to arrive at market value, SEARS' [sic] methods of calculating adjustments for these factors were either inappropriate or unpersuasive. For instance, various testimonies proffered by SEARS with respect to the inventory at the Repair Parts Distribution Center in Garland, Texas (the "RPDC"), Account # 8907, were self-contradictory. The court finds, for instance, based on Jim Stevenson's testimony that the RPDC inventory consisted largely of computer parts inventory and

equal market value as a matter of law. Sears also argues that the evidence is legally and factually insufficient to support the court's findings of fact twelve, thirteen, fourteen, sixteen, seventeen, and eighteen.

In point of error number three, Sears challenges conclusion of law number two as it relates to the conclusion that "SEARS has not met its initial burden of proof."[4] Although labeled "conclusions of law," we conclude the challenged portion of conclusion of law two is instead a finding of fact. *See Ray v. Farmers State Bank,* 576 S.W.2d 607, 608 n. 1 (Tex.1979). We

parts to support SEARS' [sic] register repairs, as well as repair parts to support foreign-manufactured products. These were not the types of items that were retailed directly to the public, but rather, were items used either internally in its business or as part of SEARS' [sic] continuing product support to its customers. Despite the type of non-retail inventories indicated by the evidence to exist at RPDC, SEARS' [sic] expert, J. Michael Clarkson, testified that it was appropriate to take significant discounts for factors which relate to retail merchandise—"out of program", "display" and "private label" discounts among them. Further, even assuming the appropriateness of the discounts, neither Clarkson's report or testimony is persuasive that the recited percentages of inventory that were supposedly "out of program", etc, had any factual basis. They are adjudged by this court to be speculation on the part of the expert.

13. SEARS urges that Mr. Stevenson's testimony established that the market value of a portion of its inventory located at the RPDC, assessed by the DCAD based on cost at $11,579,020.11 had a market value of "zero". See Plaintiff's Exhibit 1. First, the information in Exhibit 1 is indisputably calculated in late 1994, rather than as of the pertinent date here, January 1, 1994. Second, Stevenson's testimony of Sear's [sic] late 1993 decision to create a reserve for a write-off is not particularly persuasive of the asserted entire lack of any value on January 1. In fact, some sales were made from this inventory during the summer of 1994. SEARS gives this court very little specificity as to the content of the inventory at the RPDC or any other of the challenged inventory locations. SEARS fails to persuade this court that its assertion of zero is at all correct or to give this court any tangible grounds upon which to make a reasonable determination as to the actual value.

14. SEARS [sic] evidence as to the other accounts is likewise lacking in concreteness and specificity sufficient to support its position on valuation. The Clarkson testimony and reports lack credibility and persuasiveness as to all of the challenged accounts.

15. The Dallas Central Appraisal District determined that the "book value" of the Inventory, as kept in accordance with "GAAP" and the principles of "lower of cost or market," provided accurate information for their performance of a cost-based appraisal, as required by the Texas Property Tax Code.

16. SEARS did not establish or prove by a preponderance of the evidence that the 1994 market values of the Inventory were different from those determined by the Dallas Central Appraisal District.

17. Absent credible evidence to the contrary, the Dallas Central Appraisal District 1994 market value appraisals stand.

18. The values reflected on the tax rolls for the Inventory on January 1, 1994 shall remain unchanged, and the market values of the Inventory on January 1, 1994 are thus established as follows:

| ACCOUNT | MARKET VALUE |
| --- | --- |
| 99820130000175200 | $10,541,546 |
| 99820130000175150 | $26,256,165 |
| 99000000216819100 | $ 3,913,779 |
| 99821070000095600 | $ 405,000 |
| 99820130000176750 | $ 4,400,750 |
| 99821070000248100 | $ 2,700,038 |
| 99820580000123700 | $ 3,516,325 |
| 99820230000498500 | $ 2,228,538 |

4. This conclusion states:

2. In this matter, SEARS bears the burden of evidencing and establishing proof of a market value for the subject property that is different from that determined by the Appraisal District. Upon meeting such burden the Defendant, Appraisal District, must establish the correctness of its market value determination, or prove some other market value for the subject property. SEARS has not met its initial burden.

will, therefore, review it under the standard appropriate for fact findings. Sears challenges the factual finding in conclusion of law number two arguing that, as a matter of law and contrary to the court's finding, Sears met its initial burden to establish that the market value of its inventory was different than the value appraised by DCAD.

In points of error four, eleven, and twelve, Sears challenges the trial courts conclusions of law eight and nine.[5] Although labeled "conclusions of law," we conclude the challenged issues in conclusions of law eight and nine are instead findings of fact. *See Ray*, 576 S.W.2d at 608 n. 1. We will, therefore, review them under the standard appropriate for fact findings. Sears argues that the evidence is legally and factually insufficient to support the factual findings in conclusions of law eight and nine.

### A. Standards of Review

A trial court's findings of fact have the same force and effect as a jury's verdict on special issues. *See Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158 (Tex. App.-Dallas 1992, writ denied); *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). We review the trial court's findings of fact under the same standards that are applied in reviewing the evidence supporting a jury's answers. *See Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

In reviewing a legal sufficiency point of error, we consider only the evidence and inferences that support the challenged finding. *See Gregory*, 835 S.W.2d at 158. We disregard all contrary evidence and inferences. *See Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). We will uphold the trial court's finding if there is more than a scintilla of evidence to support it. *See Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979).

In reviewing a factual sufficiency point of error, we consider all of the evidence. We set aside a finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See Gregory*, 835 S.W.2d at 158.

 Sears had the burden to prove the market value of its inventory was different than the value appraised by DCAD. *See In re Quality Beverage*, 170 B.R. 310, 313 (Bankr.S.D.Tex.1994). In conclusion of law two, the trial court concluded Sears did not meet this initial burden of proof. In findings of fact eight and fifteen, the court concluded that book values, which were kept in accordance with GAAP, provided information upon which a market value appraisal could be based. When a party attacks an adverse fact finding as a matter of law, the party must surmount two hurdles: (1) the record must be examined for evidence that supports the court's finding, while ignoring all other evidence to the contrary; (2) if there is no evidence to support the finding, the entire record must be examined to see if the contrary proposition is established as a matter of law. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991);

---

5. Those conclusions state:

 8. [SE]ARS failed to prove that the market value of the inventory differed from the book value of the Inventory indicated in SEARS' [sic] accounting records.

9. SEARS failed to prove "the price for which [the inventory] would sell as a unit to a purchaser who would continue the business."

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

### B. Inventory Appraisal Under the Texas Property Tax Code

Sears essentially took the position that market value was book value reduced for cost of maintaining warranties; value of brand names; cost incurred to sell the inventory; and physical, functional, and economic obsolescence as indicated by inventory turnover ratios. DCAD argued that, because Sears's accounting records were maintained in accordance with GAAP, Sears's book values for the inventories already reflected reductions for obsolescence and were, therefore, equivalent to, or at least a reliable indication of, market value. The trial court used the values proposed by DCAD in determining the market value of the inventory.

### C. Legal Sufficiency of the Evidence

■ A review of the record reveals the following evidence supporting the trial court's findings of fact. There was testimony and evidence demonstrating that Sears maintained its accounting records in accordance with GAAP. Under GAAP, inventory is valued at the lower of cost or market value. Randall Scott ("Scott"), an appraiser with DCAD, testified that, in the phrase "lower of cost or market," "cost" means the cost to acquire the inventory plus any associated shipping, handling, and fees that would be involved in getting the inventory to a certain location, and "market" means replacement cost. There was also testimony and evidence that a value at "lower of cost or market" includes adjustments for physical, functional, and economic obsolescence. Thus, Scott contended Sears's book value had already incorporated certain reductions for obsolescence. Scott also testified it is an accepted appraisal technique to consider the lower of cost or market value in appraising retail inventory for purposes of ad valorem taxation.

DCAD also presented evidence that the book value of Sears's inventory was a reliable indication of market value, and that Sears did not provide DCAD with any documents suggesting that their books were not kept in accordance with GAAP. Scott testified Sears's book values were kept in accordance with GAAP reflecting the lower of cost or market value. This means Sears's book value would have taken into account physical, functional, and economic obsolescence as of the appraisal date, and therefore served as an excellent representation of market value. In contrast, Scott stated that book values not kept in accordance with GAAP would not serve as a reliable indication of market value. Sears did not produce any documents that suggested its book values had not been adjusted for deterioration, obsolescence, or other factors.

DCAD further offered testimony and evidence of the value of Sears's inventory at each of its locations based on Sears's book value. These values were incorporated into the trial court's finding of fact number eighteen.

One of Sears's experts, J. Michael Clarkson ("Clarkson"), testified no articles or documents exist that support the use of inventory turnover ratios as an indicator of obsolescence for purposes of appraising property. Clarkson also testified that if Sears's book values did in fact already include certain reductions for obsolescence, the inventory market values proposed by Sears would reflect a value which was too low. Both David Painter ("Painter"), a general manager at one of Sears's stores, and Jack Friedman ("Friedman"), one of Sears's experts, stated that, under GAAP, warranty costs, brand name, and the cost of selling inven-

tory are not components of book value. Painter also testified there are factors that can affect inventory turnover that are not relevant to determining book value, such as incorrect buying procedures, management practices, and store location. Other than in the present case, Friedman stated he had never seen an appraiser utilize an inventory turnover factor to directly indicate obsolescence.

In light of our review of the record, including the evidence noted above, we conclude there was more than a scintilla of evidence to support the challenged findings of fact. We, therefore, overrule Sears's points of error five through twelve inasmuch as it challenges the legal sufficiency of the evidence. Furthermore, the evidence noted above is some evidence to support the trial court's findings of fact eight and fifteen. Therefore, we also overrule points of error one and two. *See Sterner*, 767 S.W.2d at 690.

## D. Factual Sufficiency of the Evidence

■ In determining whether the evidence was factually sufficient to support the trial court's findings of fact, a review of the entire record reveals the following evidence in addition to the evidence detailed above.

Friedman testified that it would be inconsistent with Generally Accepted Appraisal Techniques ("GAAT") for an appraiser to use turnover statistics to identify and quantify obsolescence. Friedman also testified that book value is not market value under section 23.12 of the property tax code and it is not consistent with GAAT to value inventory by exclusively determining that market value under section 23.12 is equal to book cost. Scott stated there is no authority stating that compliance with GAAP automatically equates to market value as defined in the property tax code.

Painter testified that Sears's book value did not reflect markdowns for physical damage and deterioration, out-of-season obsolescence, assortment imbalance, value of warranties, or value of brand name. Painter stated that Sears's book cost only reflected the original cost. Clarkson testified that Sears's book value did not reflect markdowns for obsolescence, out-of-season value reductions, or cost to maintain warranties. Clarkson also testified that, in his report, he valued Sears's inventory based on what Sears paid for the property, less markdowns for changes to the physical makeup of the property, physical deterioration, changes to internal composition, functional obsolescence, and changes to the economic or external factors affecting value.

The record, however, also reflects Clarkson produced no documents that supported his methods or methodology in making his value determinations under the Texas Property Tax Code. Clarkson testified he did not think it was important to know whether the book values he utilized as a starting point for his valuation were kept in accordance with GAAP. The record also reflects the inventory Clarkson viewed in making his determination as to market value was inventory that was on hand at Sears in 1997, three years after the relevant date for valuation. Clarkson also stated that while he was confident Sears's inventory had changed between the valuation date of January 1, 1994 and 1997, he did not take these changes into account when making his inventory valuation in 1997. The record further reflects that Clarkson made certain reductions for warranty values on inventory located in three of Sears's warehouses even though such warranty costs would not have been in-

curred by Sears until the goods were sold at retail.

We note the trial judge specifically found that Clarkson's testimony "lack[ed] credibility and persuasiveness as to all of the challenged accounts." In a bench trial, the trial judge is the sole judge of the credibility of the witnesses. *See Jones v. Duggan*, 943 S.W.2d 90, 93 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Henry S. Miller Residential Serv. Corp. v. Arthur*, 671 S.W.2d 670, 671 (Tex.App.-Dallas 1984, no writ).

### E. Conclusion

After reviewing the entire record, including the evidence noted above, we conclude that the trial court's findings were not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. We, therefore, overrule Sears's points of error four through twelve inasmuch as it challenges the factual sufficiency of the trial court's findings of fact.

Furthermore, after reviewing all of the evidence, we cannot conclude Sears met its burden to establish, as a matter of law, that the market value of its inventory was different than the appraised value. *See In re Quality Beverage*, 170 B.R. at 313. Therefore, we overrule point of error three.

## II. CHALLENGE TO THE TRIAL COURT'S CONCLUSIONS OF LAW

In points of error one, four, and thirteen, Sears challenges conclusions of law seven, ten, and eleven.[6]

We conclude conclusion of law seven constitutes both a finding of fact and conclusion of law. To the extent Sears challenges the court's finding that the book value of Sears's inventory was equivalent to, or an indication of, its market value, we overrule point of error one based on our previous discussion concerning Sears's challenges to the trial court's findings of fact on those issues.

### A. Standard of Review

When challenged on appeal, a trial court's conclusions of law are reviewed *de novo*. *See University of Tex. Law School v. Texas Legal Fund.*, 958 S.W.2d 479, 481 (Tex.App.—Austin 1997, no pet.). An appellate court is not bound by the conclusions of law made by a trial court and will review them independently to determine their legal correctness. *See Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 498 (Tex.App.-Dallas 1995, writ denied).

### B. Book Value Vis–a–Vis Market Value

It is important to note that in conclusion of law seven, the trial court did not con-

**6.** Those conclusions state:

7. When the cost information of inventory is calculated in the books and records of a company in accordance with generally accepted accounting principles ("GAAP"), which incorporate the lower of cost or market principle, the recorded 'book value' accurately reflects the price for which the inventory would sell as a unit to a purchaser who would continue the business. Thus, the "book value" of the inventory, as determined by following generally accepted accounting principles, at least presumptively provides an accurate and fair cost-based representation of the market value of the inventory for ad valorem tax purposes.

10. Dallas Central Appraisal District, Defendant, is entitled to recover the its [sic] costs of court, and SEARS' [sic] requests for attorneys fees are denied.

11. Since no change to the tax rolls are necessary as a result of this litigation, a Judgment has been entered in favor of the Defendant, ordering that the Plaintiff take nothing from this suit, and that Defendants be entitled to recover costs.

clude as a matter of law that book value *equals* market value. The essence of the conclusion of law in question is that book value *can* serve as an indication of market value.

In support of its argument that as a matter of law book value does not equal market value, Sears cites the following cases: *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918 (Tex.1977); *Travis Cent. Appraisal Dist. v. FM Properties Operating Co.*, 947 S.W.2d 724 (Tex.App.—Austin 1997, pet. denied); *Cheek v. Humphreys*, 800 S.W.2d 596 (Tex.App.-Houston [14th Dist.] 1990, writ denied); *Coastal States Petroleum Co. v. Corpus Christi Indep. Sch. Dist.*, 707 S.W.2d 206 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e). None of these cases involve the valuation of merchandise inventory and there is no indication that the book value at issue in any of these cases was calculated in accordance with GAAP. Furthermore, these cases are unpersuasive for the following reasons.

In *Polk*, the Texas Supreme Court concluded the court of appeals had erred in equating book value with market value. *Polk*, 554 S.W.2d at 923. *Polk* is distinguishable from the present case in two respects. First, while the valuation dispute before us involves personal property inventory, the valuation dispute in *Polk* concerned real property. Under the property tax code, real property and inventory are appraised by very different methods. Real property is appraised at market value as determined by generally accepted appraisal methods or techniques. *See* TEX. TAX CODE ANN. § 23.01 (Vernon Supp. 2000). Under the provision for the valuation of inventory, property is appraised at the price for which it would sell as a unit to a purchaser who would continue the business. *See id.* § 23.12. Second, in *Polk*, "it was undisputed at trial that [book

value] was not equal to market value." *Polk*, 554 S.W.2d at 923. In the case before us, the equivalency of the book value and market value *was* the central issue in dispute. In light of these distinctions, *Polk* is not on point.

*FM Properties* merely stands for the proposition that, for ad valorem tax purposes, the inventory should be valued at market value as determined under the relevant willing buyer/seller test. *FM Properties*, 947 S.W.2d at 732. *FM Properties* has no bearing on whether book value might serve as an indication of market value and is, therefore, not relevant to our analysis.

In *Cheek*, the Houston Fourteenth court stated that "[b]ook value is an improper method of determining the value of partnership *equipment* on dissolution of the partnership." *Cheek*, 800 S.W.2d at 598 (emphasis added). This case is also distinguishable for three reasons. First, inventory includes assets that are generally sold for a profit, while equipment generally includes assets maintained for use, but not for sale. *See* BLACK'S LAW DICTIONARY 537, 824 (6th ed.1990). In light of these distinctions, equipment and inventory are valued in a different manner for ad valorem tax purposes. As previously noted, under the provisions for appraisals generally, taxable property is to be appraised at market value as determined by generally accepted appraisal methods and techniques. *See* TEX. TAX CODE ANN. § 23.01. However, section 23.12 of the property tax code provides that inventory is appraised at the price for which it would sell as a unit to a purchaser who would continue the business. *See id.* § 23.12. Second, as noted previously, there is no indication the book value involved in *Cheek* was calculated according to GAAP. Lastly, the purposes for valuing property upon the dissolution of a partnership and property for ad valorem

tax assessment are very different. Property is valued on dissolution of a partnership to permit the partnership, after discharging its obligations to creditors, to distribute any surplus to the individual partners. *See* Tex.Rev.Civ. Stat. Ann. art. 6132b–8.06(a) (Vernon Supp.2000). The purpose for appraising inventory under the tax code is to enable the taxing authority to assess ad valorem taxes against the owner of the inventory. Given these distinctions, we do not see a relevant relationship between the valuation of partnership assets upon dissolution of a partnership and the appraisal of inventory for ad valorem tax assessment. The *Cheek* case is not on point.

Finally, in *Coastal States*, the Corpus Christi court stated that "book value is *not necessarily* the true market value of appellant's inventory, nor, ... is market value *necessarily* book value." *Coastal States*, 707 S.W.2d at 211 (emphasis added). The court further said, "[b]ook value is not a proper measure of taxable value *when the evidence shows that it differs from market value*." *Id.* at 212 (emphasis added). This language does not preclude using book value as an indication of market value when the evidence demonstrates they are in fact equal. Furthermore, the court went on to note that all relevant figures are taken into account when determining market value for ad valorem tax purposes, and book value might serve as an indication of market value. *See id.* Thus, it would follow that if the evidence demonstrates book value and market value are equal, book value could very well serve as an indication of market value. Therefore, *Coastal States* does not weigh in favor of Sears's argument.

*C. Conclusion*

▌ In some circumstances, book value of inventory may be probative of market value by either serving as some indication of market value or by being equivalent to market value. *See In re Quality Beverage Co.*, 170 B.R. at 316–17; *Coastal States*, 707 S.W.2d at 211, 212; *Cauble v. Handler*, 503 S.W.2d 362, 365 (Tex.Civ. App.-Fort Worth 1973, writ ref'd n.r.e.). In other circumstances, the two values may be entirely unrelated. *See Polk*, 554 S.W.2d at 923; *Cheek*, 800 S.W.2d at 598. Whether the book value of inventory is in fact indicative of or equivalent to its market value is an issue to be determined by the trier of fact on a case by case basis. We decline Sears's invitation to hold that, as a matter of law, inventory book value derived according to generally accepted accounting principles is not equal to market value. We overrule point of error one.

Conclusions of law ten and eleven were contingent upon the trial court's findings of fact. Because we have overruled all points of error challenging the findings of fact, we also overrule points of error four and thirteen. Conclusion

Having overruled all of Sears's points of error, we affirm the judgment of the trial court.